LACEWELL *v.* GRIFFIN.

4-8755                                          219 S. W. 2d 227

Opinion delivered March 21, 1949.

Rehearing denied April 25, 1949.

*Hardin, Barton & Shaw,* for appellant.

*Harper, Harper & Young* and *Creekmore & Robinson,* for appellee.

ED. F. McFADDIN, Justice. This appeal stems from a collision between a bus owned by appellees and a truck owned by appellant, and presents for decision questions which arise because of provisions found in Act 315 of 1941, known as the "Uniform Contribution Among Tortfeasors Act." We identify the parties: Appellees Griffin and Roberson are partners, doing business under the name of Cowen Bus Line, and are engaged as a motor carrier of passengers. Appellee Lewis was the driver of the Cowen bus involved in the collision. We will hereinafter refer to all the appellees as "Cowen." Appellant Lacewell was the owner and driver of the truck that was in the collision with the Cowen bus.

The facts are as follows: Before daylight on January 5, 1947, Lacewell's truck was stopped on the highway in Sebastian county with no rear lights or flares as provided by highway regulations (§ 6761 and § 6769, Pope's Digest). Cowen's bus, operated by Lewis as aforesaid, drove into the rear of the Lacewell truck, and Felker, a passenger in the bus, was injured. Then events occurred on the dates shown in the following lettered paragraphs:

(a) On April 26, 1947, Lacewell paid Felker $2,625 in settlement of any claim Felker might have against him because of said collision and consequent injuries; and Felker executed to Lacewell a covenant not to sue him. This instrument released no one except Lacewell.

(b) On June 9, 1947, Felker (a resident of Crawford county at the time of the collision) filed an action against Cowen in the Crawford Circuit Court for $20,000 damages for injuries claimed by Felker to have been suffered by him while a passenger on the Cowen bus in the said collision of January 5, 1947. The negligence of Cowen was alleged to have been the excessive speed of the bus and the failure of the driver to keep a reasonable lookout.

(c) On July 1, 1947, Cowen filed motion in the said case for leave to sue Lacewell as third party defendant. This third party practice is regulated by the said Act 315 of 1941. The Crawford Circuit Court granted the permission the same day. Cowen then filed a third party complaint against Lacewell, alleging that the collision between the Cowen bus—with resultant injuries, if any, to Felker—was caused solely by the negligence of Lacewell; and that Lacewell should pay all such damages and hold Cowen harmless. In one place in the transcript it appears that this third party complaint was filed on July 1, 1947; in another place, the date is July 3, 1947. The discrepancy in the filing date is unimportant, because the affidavit states that service was on the Secretary of State under Act 40 of 1941 on July 7, 1947, and that a registered letter was mailed to Lacewell on July 8, 1947.

(d) On July 3, 1947 (at all events, a date before Lacewell received notice of the third party complaint),

Cowen entered into an agreement of settlement with Felker for a consideration of $3,500; and on the same day the Crawford Circuit Court entered a judgment for Felker reading in part as follows:

"It is therefore ordered and adjudged that plaintiff have and recover of and from the defendants, John A. Griffin and Geo. Roberson, partners doing business as Cowen Bus Line, and Charles H. Lewis, the sum of $3,500 and his costs, for which let execution issue; such judgment to be in full satisfaction of plaintiff's claim against said defendants, and the rendition and payment thereof shall not affect or impair such defendants' rights to proceed further against the third party defendant, Elmer Lacewell, for contribution thereto or to enforce payment by him of his proportionate part thereof as may be hereafter determined, as provided by law."

It will be observed that this judgment did not attempt to extinguish any previous or present claim of Felker against Lacewell, but only attempted to preserve Cowen's claim against Lacewell.

(e) On July 28, 1947, Lacewell filed his motion to quash service, which was overruled. (This will be discussed in Topic I, *infra*.) Later, on May 8, 1948, Lacewell filed his answer and cross complaint to the third party complaint filed against him by Cowen. In this pleading, and after denying all negligence, Lacewell alleged that he had settled with Felker (as set forth in the paragraph lettered "a," *supra*), and that Cowen had settled with Felker (as set forth in the paragraph lettered "d," *supra*), and that the Cowen-Felker "agreement of settlement and the subsequent order evidencing the same was not such a settlement as would entitle the defendants to recover any contribution from this third party defendant. That the defendants should take nothing by reason of their third party complaint herein." The merits of this claim by Lacewell, as contained in the above quotation, constitute the matters to be discussed in Topic II, *infra*.

(f) With the issues thus joined between Cowen and Lacewell, the cause proceeded to trial with a jury verdict

and resultant judgment for Cowen against Lacewell for $3,500, being the full amount Cowen had paid Felker in settlement as detailed in paragraph "d," *supra.* Lacewell has appealed, and presents—*inter alia*—points I and II subsequently to be discussed.

Since both of these points arise under said Act 315 of 1941, known as the "Uniform Contribution Among Tortfeasors Act" (and hereinafter referred to as the "Uniform Act"), we may well consider the Act at the outset. It has been before this court in the following cases: *Schultz* v. *Young,* 205 Ark. 533, 169 S. W. 2d 648; *Ward* v. *Walker,* 206 Ark. 988, 178 S. W. 2d 62; *Commercial Casualty Insurance Co.* v. *Leonard,* 210 Ark. 575, 196 S. W. 2d 919; *Little* v. *Miles,* 213 Ark. 725, 212 S. W. 2d 935. In *Schultz* v. *Young, supra,* the Uniform Act was discussed in some detail, and we there gave some of its history and purposes. There is a case note in 1 Ark. Law Review, p. 190, concerning this Act. The case note is well written and worthy of consideration, and points out that prior to the adoption of the Uniform Act there could be no contribution exacted by one joint tortfeasor from another; and also that a general release by the injured party to one joint tortfeasor worked a release of all. The Uniform Act not only changed these rules, but also effectuated other changes.

The Uniform Act was proposed by the National Conference of Commissioners on Uniform State Laws, in 1939, and has now been adopted in its main provisions by the States of Arkansas, Maryland, New Mexico, Rhode Island and South Dakota, and also by the Territory of Hawaii. Thus, as a practical matter, we have cases from only a few States that consider this Act. Some of these cases are: *Hackett* v. *Hyson,* 72 R. I. 132, 48 Atl. 2d 353, 166 A. L. R. 1096; *Baltimore Transit Co.* v. *State,* 184 Md. 647, 39 Atl. 2d 858, 156 A. L. R. 460; *Brotman* v. *McNamara,* 181 Md. 224, 29 Atl. 2d 264.[1] With the foregoing as background, we come to the points to be decided.

[1] In addition to the cases and the notes in the Uniform Laws Annotated (Vol. IX, p. 161 *et seq.* and Cumulative Pocket Parts), there are law review articles such as the one in the Arkansas Law Review previously mentioned; and there is the reference to the act in *Kan. City Ry. Co.* v. *McDaniel* (8th C. C. A.), 131 Fed. 2d 89. There

I. *Jurisdiction.* As mentioned in paragraph lettered "e," *supra,* Lacewell claims that the Crawford Circuit Court had no jurisdiction of the third party complaint of Cowen against Lacewell; and he cites the venue Act (Act 314 of 1939) as his reliance. That Act (now found in Ark. Stats. (1947), § 27-610) localizes venue in certain cases to be either the county in which the accident occurred or the county in which the plaintiff resided. Lacewell admits that Felker resided in Crawford county, and for that reason could bring the action in Crawford county. But Lacewell says that when Cowen settled with Felker, then Felker's residence ceased to be a controlling factor, and that the Crawford Circuit Court lost jurisdiction because the accident happened in Sebastian county, and Cowen lived in Sebastian county, and therefore under the said Act 314 the venue in the action between Cowen and Lacewell would be in Sebastian county.

We hold this contention to be without merit, because the action between Cowen and Lacewell was a third party action growing out of the Felker-Cowen action, which had been properly brought in Crawford county; and the third party action necessarily continued in the same venue as that of the original action. Section 7, subdivision 1 of the Act 315 of 1941 (the Uniform Act) provides:

"Before answering, a defendant seeking contribution in a tort action may move *ex parte* or, after answering, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable as a joint tortfeasor to him or to the plaintiff for all or part of the plaintiff's claim against him. If the motion is granted and the summons and complaint are served, the person so served, hereinafter called the third-party defendant, shall make his defense to the complaint of the

are general annotations on various phases of joint tortfeasor matters in 166 A. L. R. 1099, 149 A. L. R. 1186, 140 A. L. R. 1306, 132 A. L. R. 1424, 122 A. L. R. 520, 85 A. L. R. 1091, 78 A. L. R. 580, 69 A. L. R. 1247; but none of these annotations directly concerns the partciular act here involved. In Ark. Statutes (1947) § 34-1001, *et seq.*, there are also lisited various annotations on general matters concerning ioint tortfeasors.

plaintiff and to the third-party complaint in the same manner as defenses are made by an original defendant to an original complaint. The third-party defendant may assert any defenses which the third-party plaintiff has to the plaintiff's claim.''

It is clear that the above-quoted language contemplates that the action between the original defendant (Cowen in this case) and the third-party defendant (Lacewell in this case) would be in the same case as that filed by the original plaintiff (Felker in this case). Therefore, since the action was originally filed in Crawford county (the correct venue), the same venue would continue in the suit between the original defendant and the third-party defendant.

II. *Instructed Verdict.* Lacewell urges that he was entitled to an instructed verdict in Cowen's third-party action against him, and urges that Cowen's ''agreement of settlement and the subsequent order evidencing the same was not such a settlement as would entitle the defendants to recover any contribution from this third-party defendant.'' We find this contention to possess merit. Section 2, subdivision 3 of the Act 315 of 1941 says: ''A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.''

It will be recalled that Cowen entered into a settlement with Felker for $3,500. The attorney who represented Felker in the settlement with Cowen testified: ''Q. Did you make an agreed settlement of Mr. Felker's case and claim for his injuries? A. Yes, we made a settlement, . . . Q. That was your settlement with the Cowen Bus Line? A. Yes.

''Q. Mr. Lacewell was not in the settlement at all? A. No, sir.''

That settlement was made before Cowen served any notice on Lacewell on the third-party complaint. The Court entered a judgment (on July 3, 1947) based on the

Felker-Cowen settlement, and that judgment did not attempt to extinguish any liability that Lacewell might have incurred to Felker. It was not until several days or a week after the Felker-Cowen settlement that Lacewell was notified of the pendency of the suit; so, under these facts, he could not interpose his defense, that he had previously settled with Felker.

In short, the Cowen settlement of $3,500 with Felker was for Cowen's benefit alone, and did not entitle Cowen to a contribution from Lacewell, just as Lacewell's settlement of $2,625 with Felker (detailed in paragraph lettered a, *supra*) was for Lacewell's benefit alone, and did not entitle Lacewell to any contribution from Cowen. Each tortfeasor settled his liability separate and distinct from the other, and without attempting to gain any benefit for the other; so, neither tortfeasor is entitled to a contribution from the other. In reaching our conclusions in this case, we have not overlooked § 5 of the said Act 315 (now found in Ark. Stats. (1947), § 34-1005) nor § 7, subdivision 6 of the Act 315 (now found in Ark. Stats. (1947), § 34-1007). We hold that § 1, subdivision 3 of the Act 315 (now found in Ark. Stats. (1947), § 34-1002) is a bar to Cowen's claim of contribution from Lacewell under the facts in this case.

It follows that the judgment of the Circuit Court is reversed, and Cowen's action against Lacewell is dismissed.

GEORGE ROSE SMITH, J., dissenting. It seems to me that the majority wholly misconceive the theory and purpose of this Uniform Act. The decision is based solely on Section 2, which provides that a joint tortfeasor who settles with the injured person is not entitled to contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement. Since Cowen's settlement did not extinguish Lacewell's liability to Felker, the majority conclude that Section 2 denies Cowen the right to contribution. But the point is that Cowen's settlement could not have extinguished Lacewell's liability, for the simple reason that Lacewell had already extinguished it himself by his own settle-

ment. It is evident that Section 2 applies only to a situation in which there is another unreleased tortfeasor at the time of settlement. But the effect of the court's decision is to interpret the Act as meaning that the tortfeasor who is the last one to settle with the plaintiff can never have contribution—because there is then no liability except his own that can be extinguished by his settlement. The inevitable consequence of this holding is that in the future joint tortfeasors must race one another in their haste to reach a settlement, for they are now told that the loser in this race has no right of contribution against the winner.

I have no doubt whatever about the error of the majority. But a further question remains: What *is* the effect of the Act in the situation presented here? This inquiry can be answered only if one clearly understands the common law rules as to contribution among joint tortfeasors and the effect of the statute upon those rules.

At common law the injured person could sue any or all joint tortfeasors but could have only one satisfaction. The Uniform Act does not change that rule in any way. But at common law if one joint tortfeasor were compelled to pay the plaintiff's entire claim he could not obtain contribution from his fellows, no matter how slight a factor his own conduct may have been in the cause of the injury. The purpose of the Uniform Act is to substitute for this harsh rule an equitable system by which the claim may be apportioned among the wrongdoers according to their relative degrees of fault. The plaintiff may still compel one defendant to pay the full amount, but the defendant who pays more than his fair share now has a cause of action against the other joint tortfeasors for recovery of whatever excess he was forced to pay.

To answer the question posed by this case we must go back to Lacewell's settlement with Felker. At that time Lacewell was under a dual obligation: (a) He was liable to Felker for the full amount of his claim; and (b) he was liable to Cowen for contribution to the extent that Cowen might later be made to pay more than his fair share of the claim. In making settlement Lacewell

discharged his liability to Felker, but the only way that he could with certainty have discharged his secondary liability to Cowen would be by exacting from Felker an agreement that the compromise payment was accepted in full satisfaction of Lacewell's proportionate share of the entire claim.

Not Section 2 but Section 5 of the Act applies to this situation. It reads: "A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, *and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors.*" (Italics mine.)

Thus the Act gave Lacewell a means of discharging both elements of his dual obligation, as he could have insisted that Felker give a proportionate release of his entire claim. Had Lacewell followed this course, Cowen would have been benefited to the extent of Lacewell's degree of fault in the cause of the collision. Suppose, for example, that Felker's suit against Cowen had later gone to trial. The jury should have been instructed that the plaintiff's claim had already been satisfied in so far as it was attributable to Lacewell's negligence. If it were found that Lacewell alone was responsible for the collision, then the verdict should be for Cowen. If it were found that Lacewell's negligence was a 90% factor in causing the injuries, then the verdict against Cowen should be for 10% of Felker's total damages as determined by the jury; and so forth in whatever ratio of comparative negligence the jury might decide upon.

But here Lacewell took the other course and by his settlement discharged only his liability to Felker. In effect he made merely a down payment upon the joint obligation to Felker, who was still free to collect from Cowen his total damages less the *amount*—as distinguished from the proportion according to relative fault—already discharged by Lacewell. (§ 4 of the Act provides

918

that a payment by one joint tortfeasor reduces the claim against the others, thereby preserving the common law rule that the plaintiff may have but one satisfaction.) It has not been shown that Cowen's settlement was fraudulent or collusive; so the trial court correctly submitted to the jury Cowen's claim for contribution.

The majority say that they have not overlooked § 5 of the Act, but nothing is more certain than that they have failed to appreciate its place in the scheme of this Uniform Act. The Commissioners on Uniform State Laws said in their note to Section 5: "Although the substance of this section would probably be recognized anyway by courts allowing contribution under the previous sections of this Act, it seems advisable nevertheless to include it." Unfortunately, the substance of this section is not recognized in Arkansas even when included in the statute.