**HODGES v. UNITED STATES FIDELITY & GUARANTY CO. et al.**

No. 1240.

Municipal Court of Appeals for the
District of Columbia.

Argued Aug. 20, 1952.

Decided Oct. 8, 1952.

Francis W. Hill, Jr., Washington, D. C., Augustus P. Crenshaw III, Washington D. C., on the brief, for appellant.

Thomas S. Jackson, Washington, D. C., Louis M. Denit and Martin R. Fain, Washington, D. C., on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

There was a collision on a roadway in the State of Maryland between the automobile of Charles W. Hodges and a truck of Transport Corporation. This resulted in the striking of a third automobile owned by Carson C. Stout. Some eight months later United States Fidelity and Guaranty Company as insurer of Transport Corporation settled the claims of Stout and four passengers in his automobile for a total of $4100, and later as subrogee of that corporation sued Hodges as joint tortfeasor for one-half of that amount.[1] The suit was based on Article 50 of the Maryland Code which enacted The Uniform Contribution Among Tortfeasors Act into the laws of that State.[2] Trial was had without a jury and resulted in a finding that Transport Corporation and Hodges were joint tortfeasors within the meaning of the Act and judgment in favor of plaintiff for $2050. Hodges appeals.

He contends that he should be absolved of liability because the negotiations and settlement between the plaintiff and the injured persons were conducted without his knowledge. He asks us to rule that one joint tortfeasor has no right to demand contribution of another, to whom he has given no notice of the settlement negotiations.

The Maryland Act provides:

"Sec. 22(a) The right of contribution exists among joint tortfeasors.

"(b) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

"(c) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement."

It will be seen at a glance that these sections make no mention of notice. But appellant urges us to rule that notice is required by implication. The case is one of first impression. Neither counsel nor this court has discovered any decisions under the Uniform Act in which the question of notice was decided or apparently even discussed.

Appellant argues that such a requirement was implicit in two cases decided under the Uniform Act. One is Congressional Country Club v. Baltimore & O. R. Co., Md., 71 A.2d 696. There the railroad com-

1. Hodges filed a counterclaim for part of his damages and his insurer was permitted to intervene and as cross-complainant to claim the amount for which it had covered Hodges. These claims failed when the trial judge found Hodges to have been contributorily negligent. But that part of the litigation is not involved on this appeal and need not be discussed.

2. Flack's Annotated Code of Maryland, Supp.1947, Article 50 § 21 et seq.; 9 ULA 153, et seq.

pany had been sued and notified the club of the pendency of suits and after requests for participation in the defense and in settlement of negotiations had been declined, settled the suits and obtained releases. The railroad then sued the club for contribution under the Act. That the railroad had notified the club of the suits and negotiations was merely mentioned by the court in stating the facts. The court gave no indication that such notice was required as a prerequisite to the right of contribution.

The second case relied on is Lacewell v. Griffin, 214 Ark. 909, 219 S.W.2d 227, 8 A.L.R.2d 189. There it was held that a settlement entered into by one tortfeasor which did not attempt to extinguish the liability of another tortfeasor did not give the former a right to contribution against the latter under the Act. Again the issue of notice did not enter into the decision.

It follows that these two cases are no authority for holding that notice of a pending settlement by one tortfeasor to another is required under the Act. Reason and fair play may suggest it, but we have no right to lay it down as a firm legal requirement.[3] The statute names only two conditions which must be met before a joint tortfeasor is entitled to contribution from another following a settlement: (1) payment of the common liability or more than a pro rata share thereof; and (2) liability of the second tortfeasor to the injured person must be extinguished.

We know of no principle which would permit us to make notice a third requirement when the statute is silent on the subject. It must be remembered that though "all tortfeasors are not rascals"[4] nevertheless a joint tortfeasor is in the eyes of the law a wrongdoer. His basic obligation to make contribution springs from the tort he jointly committed. Ultimately he is called upon to contribute his share only after his joint tortfeasor has discharged the joint liability under a settlement as prescribed by the Act.

Appellant builds an argument from the fact that the Act permits one joint tortfeasor to file a third party complaint against another in a tort action against the former.[5] But this gives no support to his position that notice to him was impliedly required by the statute. The third party practice provision was included as an optional section in the Uniform Act to provide for special procedure in those states where third party practice was not permissible.[6] Moreover, it is clear under sections 21 and 27 that third party practice is merely permissive and that contribution proceedings may be instituted *after* judgment taken.[7] We realize of course that an action at law is subject to judicial safeguards which are not present in a private settlement. But there is no claim here that the settlements were unfair or collusive or that there was any attempt to defraud defendant.[8] We conclude that we would have no right to imply a condition in the statute, which the Maryland legislature has specifically omitted.

Did the releases executed by the injured persons extinguish Hodges' liability to them? Section 22(c) of the Act provides that a joint tortfeasor who enters into a settlement with an injured person is not entitled to contribution from another joint tortfeasor unless the liability of the latter is extinguished by the settlement. Section 24 of the Act provides that a release by the injured person of one joint tortfeasor does not discharge the other tortfeasors unless the release so provides.[9]

3. See Restatement, Restitution, secs. 86 and 82.

4. Commissioner's Prefatory Note, Uniform Contribution Act, 9 ULA 153.

5. Section 27 of Maryland Act.

6. See Commissioner's note, 9 ULA 164.

7. See Commissioner's note, 9 ULA 156.

8. Under the decision in the Congressional Country Club case unfairness or fraud may be asserted by a joint tortfeasor against whom contribution is sought.

9. Plaintiff contends that since Section 24 of the Maryland Act is titled "Release: Effect on Injured Person's Claim", it is not applicable . where one tortfeasor brings suit against another for contribution. This is a question we need not now decide.

The four releases totaling $1700 are identical except for names and amounts. They are on printed forms and recite in part that in consideration of the payment of a certain amount the signer does "release and forever discharge the said Payer [Transport Corporation] and all other persons, firms, and corporations, both known and unknown, of and from any and all claims, demands, damages [etc.] for or because of any matter or thing done by anyone * * * on account of all injuries both to person or property resulting, or to result [from the accident] * * *" identifying the time and place thereof. Hodges argues that because he was not named in the releases, his liability to the injured parties has not been extinguished.

■ If appellant's view were sound, we would have to read this requirement of the Act to be "does not discharge the other tortfeasors unless the release so provides by specifically naming the other tortfeasors." We must reject such a proposed construction as strained and unrealistic. We think a release can "so provide" without so naming the other tortfeasors, and that such was accomplished in this case.

Another argument pressed upon us is that under the doctrine of ejusdem generis the general words "and all other persons, firms, and corporations, both known and unknown" do not include or protect Hodges. This argument seems to be primarily that only those whose liability could be made (as stated in appellant's brief) "through or on account of the liability of the Transport Corporation" are included within the release. We think this argument answers itself. If the liability of one were dependent "through or upon the liability of the Transport Corporation" a release of the latter would necessarily be a release of the former; and then these words in the release would become meaningless.

■ But apart from that, we note that the doctrine of ejusdem generis is a mere suggestion to the judicial mind that when the author uses particular words, his words of more general description may not have been intended to embrace any others than those within the class.[10] The doctrine is not a rule of substantive law: it is merely a rule of construction to be used as an aid to interpretation when intention is not otherwise apparent.[11]

■ We think that here the intention of the parties to the release is clearly apparent without resort to rules of construction. The releases do not discharge the Transport Corporation and then state a mere catchall such as "and other persons." The releases go much further and release, after the Transport Corporation, "all other persons, firms, and corporations, both known and unknown * * * because of any matter or thing done by anyone," in the collision which was specifically identified by time and place. (Emphasis supplied.) The only reasonable construction of these words is that they were intended to protect not only the Transport Corporation, but also anyone else chargeable with liability for the damage done in the specified collision. Thus there has been completely excluded the possibility that the releasors intended to reserve any claim against anyone because of the accident.

There remains a question as to the extent to which defendant is liable to contribute. Carson C. Stout executed one of the releases mentioned above dated March 13, 1950, in which the consideration was recited to be $100. There was also in evidence a draft for $2400 dated three days later drawn by plaintiff in favor of Stout and a co-payee. Stout was the owner of an automobile severely damaged in the collision and in his deposition testified that the settlement represented two claims, one for personal injuries and one for property damage.

The following is printed on the reverse of the draft mentioned: "By the acceptance and indorsement of this draft it is

10. See State v. McGillic, 25 N.D. 27, 141 N.W. 82.

11. See In re Grainger's Estate, 151 Neb. 555, 38 N.W.2d 435; City of Lexington v. Edgerton, 289 Ky. 815, 159 S.W.2d 1015, 151 A.L.R. 1207; Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217.

agreed that said draft is in full and final settlement of all liability and claims against the person, [etc.] covered under the terms of the policy as an insured and/or the United States Fidelity and Guaranty Company as insurer because of personal injuries or damage to property resulting or to result from an accident which occurred on or about the date stated on the face hereof." Under this statement appeared the indorsements of Stout and the co-payee. The first release recited, in addition to the consideration of $100, that the Payer "has made no agreement or promise to do or omit to do any act or thing not herein set forth."

■■■ Appellant contends that since the first release purported to be absolute and complete, plaintiff was acting as a volunteer in the payment of the $2400 and that appellant cannot therefore be required to contribute one-half that amount. He also says that because the purported release on the draft did not include defendant it does not come within the provisions of the statute. As we have already said, the first release was a full and complete release of defendant's liability to the injured parties. The trial judge also said, "While these two instruments are not identical in time of execution, a reasonable inference from the evidence shows their executions were contemporaneous acts dealing with the termination of the claims asserted by Stout." He applied the well-known rule that separate instruments executed as a part of the same transaction may be construed together to determine the full intent therein incorporated.[12] With the application of this principle we agree. We have no doubt plaintiff had the right to show that it had paid the $2400 as a part of the complete settlement of the several claims growing out of the collision. On sufficient evidence, the trial judge accepted that showing.

Affirmed.

12. See Crowell v. Gould, 68 App.D.C. 297, 96 F.2d 569, and cases there cited.