319 P.2d 949

Ansano LOMMORI, Aquilina Lommori, Joseph Sei, and Amy Sei, Appellants,

v.

MILNER HOTELS, Inc., a Delaware Corporation, Appellee.

No. 6230.

Supreme Court of New Mexico.

Oct. 22, 1957.

Rehearing Denied Jan. 15, 1958.

Simms, Modrall, Seymour, Sperling & Roehl, Thomas J. Smiley, Albuquerque, for appellants.

Rodey, Dickason, Sloan, Akin & Robb, James C. Ritchie, Albuquerque, for appellee.

McGHEE, Justice.

Appellants bring for review a directed verdict and judgment against them on cross-claims arising out of an action for damages in tort.

Lawrence Sanchez filed a complaint for personal injuries on April 22, 1954, in the district court for Bernalillo County. As amended, his complaint asked for damages in the amount of $147,117.72 from the Milner Hotels, Inc., lessee, and Ansano Lommori, Aquilina Lommori, Joseph Sei and Amy Sei, hereafter referred to as lessors. He alleged that while walking past the Milner Hotel a pane of glass fell from an upper story window, causing his injuries.

The Milner Hotels, Inc., hereafter referred to as lessee, cross-claimed for recovery

from the lessors for any sums it might be found liable to the plaintiff, alleging a covenant in the lease requiring lessors to maintain the roof and exterior of the demised premises. The lessors then filed their cross-claim against the lessee averring that the tenant in possession was solely liable for injuries sustained by plaintiff, that lease covenants required the lessee to keep and maintain the premises in good order and repair, and to save the lessors harmless from any liability arising out of the occupancy or use of the premises.

The claim of plaintiff Sanchez was subsequently settled by defendants, lessee and lessors, whereby the plaintiff was paid $18,-000, with the defendants each paying $9,000 of this sum. It was further stipulated that neither defendant would question the reasonableness of the settlement made with Sanchez, and that neither would assert as a defense to the cross-claim of the other defendant, that he was not liable to the plaintiff.

The case was tried to a jury, but the court directed a verdict for lessee, dismissed the cross-claim of lessors and awarded $9,000 on the cross-claim of lessee.

From the facts in the case it was established that the injury involved was caused by a falling pane of glass from a window on the third floor of the hotel. The pane fell intact, glazier points, or barbs, which held it in place were pushed outward and putty from the sash was found to be old and brittle with paint behind the putty which normally would have been against the glass. Window frames and sashes of the building had been repainted in 1949 by lessors, with reputtying ordered where necessary. The lease in question provides:

"The Lessor shall have the right from time to time during the term of this lease to enter into and upon the leased premises for the purposes of examining the same and making such alterations, repairs and doing such other things to the premises or equipment as may become necessary or advisable.

"The Lessor agrees to maintain the roof and exterior of the demised premises in good condition and repair."

In directing a verdict for lessee the court apparently concluded as a matter of law that liability would fall on the lessors under the covenant to repair if the defective window was part of the exterior of the building. The jury was directed as follows:

" * * * the Court finally decided the case for you, and held that none of the facts presented in the case would affect the terms of the lease, which provided that the owner is responsible for the exterior of the building, and that the cited cases hold that windows and window frames are part of the exterior."

Lessors attack this ruling on the basis that the covenant to repair is ambiguous in that the defective window could be considered interior as well as exterior, a question that should be left to the jury, and that there was sufficient evidence to raise an issue of fact for the jury as to whether the lessee exercised such control of the premises as to make him liable.

There is no doubt but that the defective putty holding the pane of glass in place was exterior. While window glass could be considered both interior and exterior, the putty was wholly exterior. This problem was considered in Marzotto v. Gay Garment Co., 1951, 11 N.J.Super. 368, 78 A.2d 394, 397. There, the landlord had covenanted to make exterior repairs and the tenant interior repairs including the replacement of cracked and broken window glass. A pane of glass had fallen from a third floor window injuring plaintiff; an examination of the window less than an hour after the accident disclosed that one whole pane of glass was gone from the lower section and that there was no putty in the window. The court said:

"We agree with the court below that this owner owed a duty to the traveling public of reasonable care in the maintenance and repair of the window, because it reserved control over such part of the property by virtue of the provision of the lease concerning the making of exterior repairs and the specific provision concerning glass. * * *"

See, also, Friedl v. Lackman, 1939, 136 Ohio St. 110, 23 N.E.2d 950, and City of New Orleans v. Impastato, 1941, 198 La. 206, 3 So.2d 559, 561, where it was stated:

"* * * The word 'exterior', as applied to a building, clearly means all of the outer surfaces thereof as distinguished from its interior or the portion enclosed by the outer surfaces."

The trial court was correct in ruling that the defective window in question was exterior and included under the covenant to repair by the lessors. If the defect had been in the glass itself, as a cracked glass, a different answer might have been called for.

■ Before considering the remaining argument of lessors, and in order to clarify the issue, the status of the law as to the problems involved in this case can be set forth as follows: The common law rule regarding liability for injuries to third persons places responsibility on the tenant in possession and excuses the landlord. There are some exceptions, as (1) when the landlord knows of a hidden defect and does not communicate that knowledge to the tenant, Coggins v. Gregorio, 10 Cir., 1938, 97 F.2d 948; (2) when the landlord binds himself by a covenant to repair; (3) when the landlord reserves control of part of the premises

as passageways, stairs, etc., Hogsett v. Hanna, 1936, 41 N.M. 22, 63 P.2d 540; (4) when the injury is to persons off the premises in which situation the owner continues liable for ordinary negligence arising from conditions of disrepair, or dangerous activities carried on by his tenant.

We do not have a New Mexico case on the first, second and fourth exceptions.

In their first point lessors raise the exception noted in (3) above and contend that the conduct of lessee was of such nature as to raise a question of fact for the jury as to whether or not lessee had assumed control of the window repairs so as to make him liable. In support of their argument that the lessee had assumed control, it was shown in evidence that the lease provided that the lessee was to keep the premises clean and return it in good order and repair on termination of the lease; that the lessee for many years had replaced cracked and broken glass although the lease was silent as to such replacement; that the lessee had repaired a torn or broken screen on one occasion; and that the lessee had cleaned the interior of window glass and had made regular inspections of the premises. There was testimony that one of the lessors did not know of the covenant to repair in the lease, and also testimony that another of the lessors, Mr. Lommori, did know of the covenant.

Against this argument the lessee placed in evidence the terms of the lease as to the covenant to repair and the right of entry for purposes of repair and inspection by lessors; that lessors inspected the premises regularly; that the defect in the window in question was exterior; that lessors had repaired all windows of the building in 1949 by repainting and reputtying them where necessary; and that the lessee had not attempted to replace or otherwise repair the window in question prior to the injury involved.

The directed verdict rule in this jurisdiction was stated by this court in Sanchez v. Gomez, 1953, 57 N.M. 383, 259 P.2d 346, 348, as follows:

"It is now well established that before the trial court may properly remove a case from the jury it should appear that no true issues of fact have been presented, for it is a party's right to have such issues decided by the judgment of his peers under provisions of state and federal constitution. The basis for a directed verdict, therefore, is the absence of an issue for a jury to resolve. It follows that when the evidence forms an issue the right to a jury determination persists. It is to safeguard this basic right of jury determination that the rule arose, and frequently announced by the court, that

when a verdict is directed because a contrary result would be without support in the evidence, the court must view the evidence in the light most favorable to the party against whom it rules; in other words, it must indulge all reasonable inferences that may be drawn from the evidence in favor of such party."

For purposes of analysis in determining whether the record was sufficient to raise an issue of fact, four circumstances must be considered. (1) There was an express covenant requiring the lessors to repair the exterior. (2) The defective window repair in this case was exterior. (3) The lessors repainted and reputtied the building windows in 1949. (4) The lessee made repairs to cracked or broken windows and on one occasion to a broken window screen.

Since the above facts do not show a rescission of the express covenant to repair, can such rescission be inferred so as to put the lessee in control of the defective exterior repair in question? It will be seen that the repairs made by lessee to cracked or broken windows and a broken window screen were occasioned by use of the premises rather than age, decay, or what is generally called wear and tear from the elements. If the lessee or his guests broke or cracked a window, both lessors and lessee took for granted that lessee would make the repairs. On no occasion was there any evidence to show that lessors expected that lessee should make exterior repairs necessitated under regular upkeep of the building. The lessors made these repairs.

■ A back wall of the building was plastered by lessors; the windows were repainted and reputtied where needed subsequent to the lease; the fire escape was reconstructed, the building rat proofed on the outside, and all this was done by lessors. The inference drawn from the fact of repairs in the nature of cracked or broken windows, or those necessitated by lessee's use of the premises, is too weak to raise a possible conclusion that lessee assumed control of exterior repairs of the windows in the face of an express covenant to the contrary. The infant inference cannot leap the gap. The evidence was not conflicting and an issue of fact for the jury as to control of exterior repairs by lessee was not raised.

The problem does not end here. To the court's statement that none of the facts presented would affect the terms of the lease making the lessors responsible for exterior repairs, the lessors contend under their second point that the action is in tort; that the parties were at least joint tortfeasors; that the lessee was contributorily negligent and had the last clear chance of avoiding the accident.

Evidence was introduced showing that the defective putty had pulled away from

the sash and was old and brittle. It was shown that the lessee through his employees made regular inspections of the building to determine if the building needed repairs in any particular. It was also shown that the lessee did not notify the lessors at any time of the necessity for any repairs. From these facts taken in the light most favorable to the appellants, a jury could reasonably have found that the lessee knew or should have known of the dangerous condition involved.

■ The operative legal effect of a covenant to repair by the lessor has been in considerable dispute. While the majority of common law jurisdictions have held the tenant liable as being in possession of the premises, the trend now is to hold the landlord for his negligent breach of a covenant to repair a dangerous condition existing before or arising after the lease, if this creates an unreasonable risk to persons on the land after notice of the condition. See Annotations 8 A.L.R. 765; 68 A.L.R. 1194; Restatement, Torts, sec. 357, comment a; Prosser, Torts, 1955, p. 474. Where the injury is to persons outside the premises the argument is even stronger for holding the landlord for ordinary negligence. The rule is stated in Appel v. Muller, 1933, 262 N.Y. 278, 186 N.E. 785, 89 A. L.R. 477, as follows:

"It is the duty of the owner of a building, abutting upon a public street, to maintain it in such a condition that it shall not become dangerous to the traveling public. * * * The owner may absolve himself from this duty by nothing less than 'alienation of the entire property, either permanently, as by deed, or temporarily, as by lease.' * * * If, by lease, he vests a tenant with exclusive possession, thereby depriving himself of the power of entry to make repairs, he is not liable to a passer-by, if the building or a part thereof, due to a condition arising in the course of the tenant's occupancy, fall upon and injure him. * * * However, if he has covenanted with the tenant to make repairs, he is liable to the passer-by for the injuries inflicted."

See, also, Marzotto v. Gay Garment Co., supra; Dean v. Hershowitz, 1935, 119 Conn. 398, 177 A. 262; Restatement, Torts, §§ 357, 378.

This does not mean, however, that the tenant was absolved from liability to the injured person. As to the injured third party, the jurisdictions allowing recovery against the landlord also allow an action against the tenant. The tenant in possession is usually said to be in the best position to effect repairs by notice or otherwise. Prosser, Torts, 1955, p. 475, states the following as the rule concerning the tenant's duty:

"The jurisdictions which find a tort duty usually construe the lessor's covenant, in the absence of an express provision to the contrary, to mean merely that he must repair only within a reasonable time after he has been notified of the dangerous condition, or has otherwise discovered it."

See, Asheim v. Fahey, 1943, 170 Or. 330, 133 P.2d 246, 145 A.L.R. 861; Restatement of Torts, sec. 357, comment a.

■■ Where the injury is to persons off the premises, and the lease contains a covenant to repair, or a reservation of right of entry for purposes of repair, it seems to us that the better rule is that the injured person has a cause of action against the landlord in tort. At the same time, unless the lease specifically releases him from the duty to inspect and notify the landlord of any disrepair, the tenant in possession has a duty to the injured party to inspect and see that the premises are in proper condition for his operation.

For the purposes of this case it is unnecessary for us to decide whether the lessee's action against the lessors is in tort or in contract. Under either theory the judgment must be reversed.

■ Where there is any recovery over for purposes of indemnity by one tortfeasor against another, it must be on the basis that they are not in pari delicto. See Krametbauer v. McDonald, 1940, 44 N.M. 473, 481, 104 P.2d 900; Annotation 157 A.L.R. 623; Renfro Drug Co. v. Lewis, 1951, 149 Tex. 507, 235 S.W.2d 609, 23 A.L. R.2d 1114.

We stated in the McDonald case, supra [104 P.2d 905]:

"The general rule is that one tortfeasor cannot recover indemnity from another where their joint concurring acts were the proximate cause of the damage."

■ Since there were sufficient facts raising an issue of negligence on the part of the lessee to inspect properly, or that he knew or should have known of the defective condition of the premises, and did not notify the lessors of that condition, we find that the court erred in directing a verdict for the lessee.

■ Nor does it aid the lessee to insist that the action is in contract. While some courts hold that the tenant's only remedy is in contract, that will not aid the lessee in this case. Damages arising out of contract must have been within the contemplation of the parties. The lease in question provides:

"The lessee agrees that, during the term of this lease, it will carry public liability and elevator insurance in the limits of $5,000 and $10,000 and workmen's compensation insurance."

It will be observed that the covenant for insurance is ambiguous. Did the parties intend that the lessee should carry insurance for the benefit of both lessee and lessors as protection against all liability claims arising out of operation of the premises to third persons? Covenants as to insurance follow the same rules of construction as other covenants in contracts. See 51 C.J.S. Landlord and Tenant § 376, p. 1125. The rule of construction of ambiguous terms in a lease was stated by us in Crecente v. Vernier, 1949, 53 N.M. 188, 204 P.2d 785, 790, in which we said:

"If construction is necessary under the circumstances, it will not be favorable to the lessee who prepared the lease.

" '(d) Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law.' Sec. 236, Restatement Law of Contracts.

" 'Since one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved in favor of the latter; and as he will ordinarily be the promisee of the promise in question,

it is sometimes stated that the contract, if ambiguous, will be interpreted in favor of the promisee. * * *' Williston on Contracts, Sec. 621."

At least two inferences can be drawn from the covenant for insurance. Either the lessee was to carry liability insurance for his own protection, a somewhat useless provision as to lessors, or he was to carry it for the protection of both the lessors and itself. Under the rules of construction set out above, it is clear that the clause requires the lessee to carry liability insurance on the premises leased by him for the benefit of both the lessors and lessee. Accordingly, lessors and lessee should be protected under the requirements of the covenant and under any policy provided by lessee. If lessee failed to meet the requirements of the covenant for insurance, then he would be liable to lessors for such failure.

On the contract theory the only fair construction that we can make of the lease in question is that the covenant to repair was intended only as an allocation of the burden of keeping parts of the premises in repair, and that the covenant for insurance is a clear indication that the parties did not intend that lessors would assume liability for defective conditions of the premises in place of the lessee.

The case will be reversed for a new trial in accordance with the views herein ex-

pressed. The costs of this appeal will be taxed against the appellee.

It is so ordered.

SADLER, COMPTON and KIKER, JJ., and J. V. GALLEGOS, District Judge, concur.