457 P.2d 364

**RIO GRANDE GAS COMPANY, Defendant-Third Party Plaintiff-Appellant,**

v.

**STAHMANN FARMS, INC., Third Party Defendant-Appellee.**

No. 8595.

Supreme Court of New Mexico.

July 28, 1969.

J. D. Weir, J. R. Crouch, Las Cruces, for appellant.

William W. Bivins, Mark B. Thompson, III, Las Cruces, for appellee.

## OPINION

NOBLE, Chief Justice.

Mrs. Losoya and Jose Losoya, in his own behalf and as next friend for their five children, recovered judgments against Rio Grande Gas Company (hereafter referred to as Rio Grande) for personal injuries and damages sustained by reason of a gas explosion. Rio Grande compromised and settled those judgments for an amount considerably less than the judgments. No appeal has been taken therefrom, but Rio Grande made Stahmann Farms, Inc. (hereafter referred to as Stahmann), the owner of the premises when the explosion occurred, a third-party defendant, claiming indemnity, or, in the alternative, contribution, if it should be determined that Stahmann was a joint tortfeasor. An instructed verdict dismissed the third-party action. Rio Grande has appealed from the directed verdict and the judgment entered pursuant thereto.

Stahmann has filed a motion to dismiss the appeal upon. the grounds that (1) Rio

Grande compromised and settled the judgment against it and in favor of the injured persons for less than the amount of the judgments without obtaining a release of the plaintiffs' claims against Stahmann, and (2) that if Stahmann had any liability to the plaintiffs, it and Rio Grande were joint tortfeasors, in pari delicto, and Stahmann is not liable for indemnity. We denied the motion to dismiss but granted leave to renew the contention at the time of argument of the case on its merits.

We first consider the motion to dismiss because even though the court may have erred in directing the verdict in Stahmann's favor, a reversal would accomplish nothing if, under the most favorable view of the evidence, Rio Grande could recover neither indemnity nor contribution.

■ The legal question of whether, by reason of its settlement of the judgments, Rio Grande is entitled to contribution from Stahmann arises under ch. 121, Laws 1947, known as the "Uniform Contribution Among Tortfeasors Act" (§§ 24-1-11 to 18, N.M.S.A. 1953) (hereafter referred to as the "Uniform Act").

The Uniform Act has now been adopted in its principal provisions by the States of Arkansas, Delaware, Hawaii, Maryland, Pennsylvania, South Dakota, Rhode Island and New Mexico. Thus, there are few decisions having considered the precise question presented in this case. Some provisions of the Uniform Act have been considered or referred to by this court in Bailey v. Jeffries-Eaves, Inc., 76 N.M. 278, 414 P.2d 503; Garrison v. Navajo Freight Lines, Inc., 74 N.M. 238, 392 P.2d 580; Salazar v. Murphy, 66 N.M. 25, 340 P.2d 1075; and Beal by Boatwright v. Southern Union Gas Co., 62 N.M. 38, 304 P.2d 566, but none of our decisions have discussed the issue presented by this appeal.

■■ It is well settled that at common law there can be no contribution among joint tortfeasors, and that one of the purposes of the Uniform Act was to provide for a proportionate allocation of the burden among tortfeasors who are liable. 9

Uniform Laws Ann. 230; Annot., 34 A.L. R.2d 1107. Attention is called to an excellent discussion of the common-law rules and to the changes brought about in Arkansas by its adoption of the Uniform Act. 1 Ark.L.Rev. 190.

Section 24-1-12(3), N.M.S.A. 1953, of the Uniform Act, reads:

"(3) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement."

The statute is specific that the release by the injured person of one joint tortfeasor does not discharge other joint tortfeasors unless the release so provides. Sec. 24-1-14, N.M.S.A. 1953. Garrison v. Navajo Freight Lines, Inc., supra. The fact of the recovery of a judgment by the injured persons against Rio Grande alone does not operate as a discharge of other joint tortfeasors. Sec. 24-1-13, N.M.S.A. 1953. Williams v. Miller, 58 N.M. 472, 272 P.2d 676. See Salazar v. Murphy, supra, and Herrera v. Uhl, 80 N.M. 140, 452 P.2d 474.

We then examine this release to determine whether Rio Grande's settlement with the plaintiffs provides for extinguishment of Stahmann's liability, if any, to the injured persons. Plaintiffs' judgments, separately listed in the single judgment, totaled $122,754.01. The satisfaction recites that the judgments in that total amount were compromised and settled by Rio Grande for an aggregate amount of $107,-000.00 and states:

"* * * in consideration of the payment of the total sum of $107,000.00, receipt of which is confessed and acknowledged, do hereby acknowledge full payment and satisfaction of said judgments, and hereby consent that the same be released and discharged of record; and the undersigned do hereby further release and forever discharge the Defendant, RIO GRANDE GAS COMPANY, from and on account of any claim or demand whatsoever."

The satisfaction concludes with the statement that the release is without prejudice to Rio Grande's right to pursue its claim for indemnification or contribution from the third-party defendant, Stahmann Farms, Inc.

The release in this case is entirely different from that in Hodges v. United States Fidelity & Guaranty Co., 91 A.2d 473, 34 A.L.R.2d 1101 (Mun.Ct.App.D.C. 1952), where the release discharged the named person and "all other persons, firm, and corporations, both known and unknown" from any claims for damages incident to the injury involved, and the court said that language completely excluded the possibility that the injured persons intended to reserve any claim against the other joint tortfeasors. East Coast Freight Lines, Inc. v. Mayor, etc., 190 Md. 256, 58 A.2d 290, 2 A.L.R.2d 386, and Kestner v. Jakobe, 412 S.W.2d 205 (Mo. Ct.App.1967), relied upon by Rio Grande, are distinguishable upon their facts. In Kestner v. Jakobe, the court construed the language of the release to be a satisfaction in full of all damages resulting from the automobile accident; thus completely releasing all other joint tortfeasors. In East Coast Freight Lines, Inc., joint tortfeasor releases were obtained from the plaintiffs. Furthermore, in Maryland, a plaintiff who has not asserted a claim against a third-party defendant, from whom contribution is sought by a joint tortfeasor, cannot thereafter assert a claim against such third party in a separate proceeding. State Farm Mut. Auto. Ins. Co. v. Briscoe, 245 Md. 147, 225 A.2d 270. No claim was made by the plaintiff against the third-party defendant in East Coast Freight Lines, Inc.

We are aware of but do not agree with the reasoning by the Supreme Court of Pennsylvania in Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648, holding that because the legislature did not include "satisfaction" of a judgment in section 3 of the Uniform Act, there was no intent to change the law concerning satisfaction of such a judgment and, consequently, the sat-

isfaction of a judgment against one tortfeasor operates to discharge other joint tortfeasors even though the release does not so provide. In our view, the reasoning by which the Supreme Court of Rhode Island, in construing its identical statute, reached an opposite result is better reasoned and more persuasive. That court said, in Hackett v. Hyson, 72 R.I. 132, 48 A.2d 353, 166 A.L.R. 1096:

"In such a situation, if the Legislature intended 'recovery of a judgment' in sec. 3 to mean merely rendition of the judgment in favor of the injured person, then it accomplished nothing by declaring that recovery of a judgment against one joint tortfeasor did not discharge the other joint tortfeasors, as that was already the law. On the other hand, if it intended the words 'recovery of a judgment,' to mean actual recovery on the judgment and not mere rendition of the judgment, then it did accomplish something, namely, the reversal of the common-law rule that the satisfaction by one joint tortfeasor of the judgment discharged the other joint tortfeasors."

The language of the release here makes it clear that the settlement between Rio Grande and the plaintiffs was for Rio Grande's benefit alone. Rio Grande settled its liability to the plaintiffs, separate and distinct from any liability of Stahmann to the plaintiffs, and without attempting to gain any benefit for Stahmann. Nor does the record reflect that Rio Grande gave notice to Stahmann of its intention to so settle with the plaintiffs. See Lacewell v. Griffin, 214 Ark. 909, 219 S.W.2d 227, 8 A.L.R.2d 189. Under these circumstances, Rio Grande is not entitled to contribution from Stahmann.

We cannot agree with Rio Grande that the question of whether it is entitled to recover indemnity from Stahmann is entirely a question of fact to be determined upon a retrial of the issues between Rio Grande and Stahmann. Before reaching the question of fact, it must first be determined whether, viewing the evidence most favor-

able to Rio Grande, the right of indemnity exists as a matter of law.

■ It is true that the Uniform Act expressly provides that it does not impair the right to indemnity. Sec. 24-1-16, N.M.S.A. 1953. We point, however, to important distinctions between the right to contribution and to indemnity. It has frequently been said that the difference between indemnity and contribution in cases between persons liable for an injury to another is that, with indemnity, the right to recover springs from a contract, express or implied, and enforces a duty on the primary wrongdoer to respond for all damages; with contribution, an obligation is imposed by law upon one joint tortfeasor to contribute his share to the discharge of the common liability. Where the facts warrant indemnity, the discharge of the obligation to the person injured by the one to whom the duty is owed by a joint tortfeasor leaves him with a right to secure repayment from the one who, as between themselves, is primarily liable. A common example is a case where a blameless employer recovers from a negligent employee, after the employer has been held liable to the injured third person upon the theory of respondeat superior. See Employers' Fire Ins. Co. v. Welch, 78 N.M. 494, 433 P.2d 79. Also common are those cases in which a governmental political subdivision is held liable to a person injured by highway or sidewalk defects and is then allowed reimbursement from the person who created the defect; and those where one voluntarily and in good faith does something at the direction of another which appears to be lawful but is, in fact, tortious, like a peace officer levying a wrongful attachment at the direction of the creditor. The officer can recover from the one directing him to levy the attachment.

Dean Leflar of the Arkansas Law School, in an article entitled, "Contribution and Indemnity Between Tortfeasors," 81 U. of Pa.L.Rev. 130, points to the considerable body of cases in a fourth field—cases in which indemnity has been granted to one who has been held liable in tort for his own negligence in failing to discover and remedy a dangerous condition created by the negligence or wrongdoing of another. See also Meriam & Thornton, "Indemnity Between Tort-Feasors," 25 N.Y.U.L.Rev. 845; Bohlen, "Contribution and Indemnity Between Tortfeasors (pt. 2)," 22 Cornell L.Q. 469; Davis, "Indemnity Between Negligent Tortfeasors," 37 Iowa L.Rev. 517. Rio Grande seeks to bring indemnity in this case within that category, but the instant case is just the reverse of that situation. Here, Rio Grande, who created the dangerous condition, is seeking indemnity from one who failed to discover or to report suspicious circumstances.

Dean Leflar points out that most of the cases falling within the fourth category rest upon one or both of two theories, (1) that the one receiving the indemnity was only passively negligent, while the other tortfeasor was actively negligent; or (2) that the one recovering indemnity was not in pari delicto with the other, or, upon both theories. Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900, appears to apply both doctrines.

It appears undisputed that Rio Grande installed a natural gas line through the Stahmann property, near the house in which plaintiffs, who worked for Stahmann, lived; and that the pipe line leaked, allowing natural gas to escape into and permeate the ground around this house. Stahmann used butane gas for heating and cooking in the houses material to this action. There had recently been a fire in the adjacent apartment and, on the morning of the explosion, a fire back of the kitchen stove in plaintiffs' apartment. Stahmann employees, familiar with gas, used a "snifter," an instrument to detect escaping butane gas. The test following these fires was negative for such gas. There was no natural gas piped into any premises material to this case. These employees believed the fire in the kitchen of plaintiffs' residence resulted from burning grease and filth back of the stove. They did not test with a "snifter" designed to detect the presence of natural gas.

This record indicates that Rio Grande's liability to the plaintiffs was one imposed by law on account of the omission of a duty of protection or care owed in discovering and correcting a gas leak in pipe lines installed and maintained by it. The third-party claim of Rio Grande for indemnity against Stahmann does not rest upon any allegation or proof of a violation by Stahmann of a duty owed to Rio Grande, but upon an alleged liability imposed by law by reason of its failure to discover the gas leak and notify Rio Grande or to require the plaintiffs to vacate the premises. The decisions are not in accord respecting a rule to determine whether the negligence of Rio Grande or that of Stahmann, if Stahmann was negligent, was active or passive. See the Leflar article supra. It is clear, however, that in this case, each failed to discover the dangerous condition, i. e., the gas leak, or correct the condition. The two parties are accordingly in pari delicto, so that in any event Rio Grande is not entitled to indemnity from Stahmann. One tortfeasor may not recover from another when they are in pari delicto. Lommori v. Milner Hotels, Inc., 63 N.M. 342, 319 P.2d 949; Krametbauer v. McDonald, supra.

It follows from what has been said that since Rio Grande can recover neither indemnity nor contribution from Stahmann, it is unnecessary to consider whether the trial court erred in directing a verdict in Stahmann's favor.

The judgment appealed from should be affirmed.

It is so ordered.

COMPTON, TACKETT and WATSON, JJ., concur.

MOISE, J., dissents.

MOISE, Justice (dissenting).

I am unable to agree with the opinion of the majority and the disposition of the case made by them.

My disagreement arises out of the statement to the effect that the "judgment by the injured persons against Rio Grande alone does not operate as a discharge of other joint tortfeasors." In the posture of this case, I am inclined to think that it would discharge them and, if so, the result reached concerning the right to seek contribution is incorrect. I recognize, of course, that Stahmann was absolved of guilt, but on this appeal Rio Grande asserts this was error.

Section 24-1-13, N.M.S.A. 1953, cited in support of the statement, and § 24-1-12(2), N.M.S.A. 1953, certainly can't be read to be applicable when suit is against two alleged tortfeasors and one is found liable, while the other is exonerated. This is the situation here, except that plaintiffs sued only one of them (Rio Grande), and the other (Stahmann) was made a third-party defendant.

It is my considered conclusion that just because plaintiffs did not formally seek a judgment in a suit against Stahmann, it does not necessarily follow that their right to do so has not been terminated. Both Williams v. Miller, 58 N.M. 472, 272 P.2d 676 (1954), and Salazar v. Murphy, 66 N. M. 25, 340 P.2d 1075 (1959), arrived at the result reached because of the peculiar situations present in each case. In Salazar we considered the case of Falls Industries, Inc. v. Consolidated Chemical Industries, Inc., 258 F.2d 277 (5th Cir. 1958). The cases were distinguished on their facts, but we said:

"The difference between the situation there and here should be evident. Here, the third-party defendant did not answer or put in issue any of the allegations of plaintiff's complaint; the case was not tried and proof made between the parties; the prior action was dismissed upon failure of plaintiff to appear for trial. Under no possible theory could the provision of Rule 15(b), F.R.C.P., which provides for amendment to conform to evidence when issues not raised by pleadings are tried by express or implied consent, be applicable. This was the foundation of the decision of the

Falls case, supra, and differs materially from the situation here present. There, the trial had been had on the merits—here, it has not. There, although by the pleadings no relief had been sought by plaintiff against third-party defendant, inasmuch as all evidence had been presented without objection, and a judgment against third-party defendant was indicated, the pleadings were considered amended to conform with the proof. This situation does not subsist here.

"It is not necessary for us to decide if in the instant case, since diversity was present between plaintiff and third-party defendant in the federal court, upon trial of the merits, all issues arising out of the claim would have been res judicata or estopped by judgment, because no claim was asserted by plaintiff against third-party defendant, and any issues present between them were not litigated. If they had been, the Falls Industries case, supra, would be in point. * * *"

An examination of the record here leads me to the conclusion that the rule in the Falls Industries case, supra, approved in Salazar, supra, for application in a proper case, is properly applicable here.

Concerning application of the rule, the following cases are helpful: Frankel v. Back, 37 F.R.D. 545 (E.D.Pa.1965); Holmes v. Capital Transit Co., 148 A.2d 788 (D.C.Mun.Ct.App. 1959); Ashford v. Burnham Aviation Service, Inc., 162 Colo. 582, 427 P.2d 875 (1967); see, also, 12 Ala.L.Rev. 209 (1959–60). A case very similar to our case is Brotman v. Mc-Namara, 181 Md. 224, 29 A.2d 264 (1942), where, it seems to me, the two dissenters were correct and anticipated the holding in the Falls Industries case, supra.

I would add a word of caution concerning what is said in the opinion about the case of Hackett v. Hyson, 72 R.I. 132, 48 A.2d 353 (1946), 166 A.L.R. 1096. In Herrera v. Uhl, 80 N.M. 140, 452 P.2d 474 (1969), the court assumed that with our adoption of the Uniform Contribution Among Tortfeasors Act, we had also adopted the prior interpretation of that act by one state (Rhode Island). Although this rule applies where a legislative act of a state is copied, Garrett v. Howden, 73 N.M. 307, 387 P.2d 874 (1963); Gray v. Armijo, 70 N.M. 245, 372 P.2d 821 (1962), I do not understand the rule to apply to legislation prepared by the Commission on Uniform State Laws. The majority here, with only passing notice of Herrera v. Uhl, supra, announce a preference to the rule of Hackett v. Hyson, supra, to that adopted in Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648 (1958). I would here note my feeling that the reasoning of Hilbert v. Roth, supra, is preferable to that of Hackett v. Hyson, supra. Maryland has recently so ruled. Grantham v. Board of County Commissioners, 251 Md. 28, 246 A.2d 548 (1968). See, also, Theobald v. Kenney's Suburban House, Inc., 48 N.J. 203, 225 A.2d 10 (1966).

Based on the foregoing, I am unable to agree with the opinion of the majority. I have given no consideration to the question of whether the trial court ruled correctly on the issue of Stahmann's negligence.

I respectfully dissent.