## SCHREYER v. KIMBALL LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit. February 6, 1893.)

### No. 81.

**1. SALE—DELIVERY—WHEN TITLE PASSES.**

A foreign merchant contracted for several cargoes of lumber to be delivered free on board ship in the Appalachicola river, seasoned when delivered, within seven months from May 1st, certain advances to be made about June 1st. These advances were made, and the first cargo was prepared by August, piled by itself in the seller's yard, and the buyer notified of readiness. The latter had difficulty in chartering ships, and later the seller's mill and all the lumber were burned. *Held,* that there was no delivery, and the title had not passed.

**2. SAME—RESCISSION.**

Immediately after the fire the seller notified the purchaser thereof by cable, with the request to "cancel all business," to which the buyer agreed, "subject to immediate return of advance." The seller accepted, but was silent as to the return of the advance. *Held,* that from this silence it could fairly be presumed that he thereby contracted to return the money.

In Error to the Circuit Court of the United States for the Northern District of Florida.

Action by Fr. Julius Schreyer against the Kimball Lumber Company to recover moneys advanced on a purchase of lumber. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

John C. Avery, for plaintiff in error.

Fred. T. Myers, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. Fr. Julius Schreyer, plaintiff in error, a lumber dealer of Bremen, Germany, brought his action in the circuit court against the Kimball Lumber Company, a corporation of the state of Florida, engaged in the manufacture of lumber at Appalachicola, to recover the sum of $2,400, alleging indebtedness of the defendant in error for that sum "for money payable by the defendant to the plaintiff for so much money loaned by the plaintiff to the defendant; and in a like sum of money for money had and received by the defendant for the use of the plaintiff; and in a like sum of money upon accounts stated between the plaintiff and the defendant." To this action the defendant entered a plea that it was never indebted as alleged. On the trial, the judge instructed the jury to return a verdict for the defendant, to which instruction the plaintiff excepted, and upon judgment entered against him, after moving in vain for a new trial, brought the case to this court for review. The evidence adduced upon the trial is all embraced in the bill of exceptions, and the question presented to us is whether it warranted the instruction given. The evidence shows that Schreyer contracted with the lumber company for three cargoes of from 900 M. to 1,500 M. feet of prime boards at $12.25 per thousand feet, to be seasoned when shipped, and to be delivered free on board

ships in the Appalachicola river, within seven months from May 1, 1890; ships to be chartered by Schreyer, and charters to be made on certain specified forms, the benefits of the whole charter party to the lumber company. It was further agreed that there was to be a rebate of 25 cents per thousand to be allowed if Schreyer's agent inspected the lumber on delivery. As to payment, it was agreed that the lumber company might draw upon Schreyer at 30 days' sight, about June 1st, in the sum of 10,000 marks, to be accepted by Schreyer and received by the lumber company as an advance on the three cargoes contracted for, the same to be deducted from the price of the last cargo; and that, otherwise, the lumber company was to draw on Schreyer for the amount of invoices at three days' sight, payable at Bremen, bills of lading to be attached to the drafts. On June 2d, the draft for 10,000 marks was drawn, and was sold, netting the lumber company the sum of $2,371.87, which sum was placed to the credit of Schreyer, and which draft was thereafter in due course paid and taken up by Schreyer. The first order under the contract, designated by the parties "Lenity," from 400 to 500 M. feet, according to specifications furnished by Schreyer, was prepared by the lumber company, and was ready for shipment in August, 1890. It was stacked in a pile by itself in the company's yards, and the plaintiff in error was notified of its readiness; and urged to send a ship for it. There was apparent difficulty in obtaining suitable ships for Appalachicola river, and the lumber remained stacked and piled until October 28, 1890, when the lumber company's mill and all the lumber in the company's yards, amounting to about 4,000,000 feet, were destroyed by fire. At the time of the fire the lumber company had insurance on all the lumber in the yard, under policies taken out before the lumber was cut for Schreyer, and taken out for the year, without regard to any particular lumber. The insurance the lumber company received, if proportioned upon the entire quantity in the yard, would have amounted to about $6.75 per thousand feet. Excluding the "Lenity" lot, still the loss of the lumber company was largely in excess of the insurance. The lumber sawed for Schreyer had not been measured nor inspected, except as it went through the mill. The net proceeds of the draft for 10,000 marks, if applied to pay for the "Lenity" order, were not sufficient to pay the value thereof. All the details of the contract were settled between the parties by correspondence, and after the contract there was considerable correspondence between the parties with reference to other orders and the vessels that Schreyer was to charter; and therein many complaints were made by the lumber company as to the failure of Schreyer to forward ships as promptly as expected. August 20, 1890, the lumber company offered to accept another order for 300 M. feet, saying that, "if necessary, we can use from quantities now cut and piled of your schedule 'Lenity.' We understand it so. But we think we can have the cargo ready in addition to 'Lenity;' that is 'Lenity' and this 300 M. feet also by October 15th, '90." This offer was accepted by Schreyer as follows: "As to above business, I request you to prepare according to my telegram,

* * * heart face floorings, eighty per cent. free of knots, prime planks, using ready quantities for these dimensions which you have already cut for 'Lenity.'" Immediately after the fire the lumber company sent a telegram to Schreyer, as follows: "All lumber and mill burned yesterday; cancel all business,"—to which Schreyer immediately replied: "We agree canceling, subject to immediate return of advance,"—and, in a letter of October 31st, wrote: "And I hope you have already sent off to me the ten thousand marks which you have no right to keep longer, as on account of the fire you cannot furnish the cargoes upon which I have given you the advance."

The evidence of Schreyer was taken under commission, and shows that, under his understanding of the contract, the 10,000 marks was an advance on the contract of three cargoes of lumber to be deducted from the invoice of the third cargo; and the correspondence between the parties prior to the advance shows that the lumber company had the same understanding. Whether the evidence warranted the instruction given to the jury to find for the defendant depends upon the question whether the title and ownership of the lot of lumber called "Lenity" had passed to Schreyer at the time that it was destroyed by fire; for, according to the common law, the risk follows the title. 2 Kent, Comm. (6th Ed.) p. 498. The judge presiding on the trial so held the law to be; for, in giving the instruction complained of, he said to the jury: "It is clear to the court, under the testimony adduced here, that the plaintiff is not entitled to recover, as the lumber at the time of the fire was the property of plaintiff, and it is his loss." Counsel for defendant in error, in a very ingenious brief, has argued his case and supported his positions by the citation of many authorities, as though the transaction between Schreyer and the lumber company was an actual sale, under which delivery had been substantially made and accepted. This view of the case, however, we do not think is sustained by the evidence. The lumber had not been measured, inspected, nor delivered, nor had the lumber company's control over it been so abandoned but what it still had the option to use the same for other purposes without responsibility to Schreyer, provided lumber in accordance with the specifications should be delivered when Schreyer sent his ship. We view the transaction as one more in the nature of an executory agreement than an actual sale. At the time the contract was made, its subject was not in existence, except in a primitive condition, either in logs or still in the trees of the forest. To comply with the contract, the lumber company had to take all the steps and do all the work necessary to produce the manufactured article contracted for. It was to be sawed out and seasoned before it came up to the conditions required, and was thereafter to be measured, inspected, and delivered. The distinction between actual sales and executory agreements to sell in the matter of title passing is well recognized in the text-books and in many adjudged cases. See 2 Kent, Comm. 450; Benj. Sales, § 308 et seq.; Hatch v. Oil Co., 100 U. S. 124, and authorities there collated. Certainly, in this case the title did not pass at the time the contract was entered into, nor, by the terms of the contract,

was it intended to pass until actual delivery free on board such ships as Schreyer might charter and send for it; and it is clear to us that, if the title to the lumber in question ever did pass, it must have been by some contract, express or implied, entered into between the parties subsequent to the making of the original agreement. The only evidence which at all points to any such subsequent contract as having been made, is that relating to the order given by Schreyer for 300 M. feet of flooring, which shows that Schreyer consented, if necessary to fill the new order, to the taking of lumber from the lot prepared to fill the "Lenity" schedule. This falls far short of showing a contract on the part of Schreyer to vary the original agreement as to the time and place of passing title to the "Lenity" cargo, and short of showing an agreement on his part to accept delivery of the "Lenity" cargo in the lumber company's yards at a time long before he would be able to obtain a ship to receive the same. Nor do we think that this evidence shows that the lumber company understood that, in giving his consent, Schreyer was accepting delivery of the "Lenity" lot; for the company expressly said, in making the proposition, "We can have the cargo ready in addition to 'Lenity.'" The whole weight to be given to this negotiation is that Schreyer, by consenting that the "Lenity" lot might be drawn from, waived delivery until the October following if the lumber company had trouble in filling both orders.

In connection with the instruction of the court to find for the defendant, it must also be noticed that, by uncontradicted evidence, when the lumber company's mill burned, the company called on Schreyer to cancel all business. At that time there were outstanding between the parties contracts covering the delivery of at least four cargoes. Schreyer consented to the cancellation of all these orders, subject to immediate return of the advance. The lumber company accepted, but was silent as to the return of the advance. From the silence of the lumber company at this time, and its acceptance of the cancellation of all orders, it is fair to presume that it thereby contracted and agreed to return the said advance, no matter what may have been its previous title or right to retain the same.

We conclude there was error in giving the instruction complained of, and therefore reverse the judgment of the circuit court, and remand the cause, with instructions to award a new trial.