## PLANTERS' OIL MILL & GIN CO. v. A. K. BURROW CO., Inc.

(Circuit Court of Appeals, Fifth Circuit. December 30, 1925.)

No. 4515.

1. Sales ⊙⟾218½—Evidence held insufficient to establish effective delivery of cotton seed linters, sold before destruction thereof by fire.

Evidence showing inspection and acceptance of cotton seed linters sold *held* insufficient to establish effective delivery before destruction thereof by fire, in view of written memorandum and rules of merchants' exchange, subject to which sales were made.

2. Appeal and error ⊙⟾1056(6)—Exclusion of evidence not sufficient to change result held harmless.

In action for purchase price of cotton linters sold, but destroyed by fire, exclusion of evidence that buyer's insurer had agreed to protect it against a claim for purchase price asserted by seller *held* harmless where, if excluded evidence had been admitted, seller's claim could not properly have prevailed.

3. Sales ⊙⟾199—Want of shipping instructions before destruction by fire of goods sold held not to affect title thereto.

That buyer of cotton linters defaulted in giving shipping instructions before goods were destroyed by fire *held* not to affect passing of title to buyer, in view of seller's remedies under rules of merchants' exchange governing the sale.

In Error to the District Court of the United States for the Northern District of Mississippi; Edwin R. Holmes, Judge.

Action by the Planters' Oil Mill & Gin Company against the A. K. Burrow Company, Inc. Judgment for defendant, and plaintiff brings error. Affirmed.

Geo. J. Leftwich, of Aberdeen, Miss. (J. G. Smythe, of Kosciusko, Miss., and Leftwich & Tubb, of Aberdeen, Miss., on the brief), for plaintiff in error.

Wm. H. Watkins, of Jackson, Miss., and David Winston Houston, of Aberdeen, Miss. (D. W. Houston, Sr. & Jr., of Aberdeen, Miss., Watkins, Watkins & Eager, of Jackson, Miss., and King, Spaulding, Mc-

Dougald & Sibley, of Atlanta, Ga., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by the plaintiff in error, herein called the seller, against the defendant in error, herein called the buyer, for the contract price of 310 bales of cotton seed linters, 300 of which were destroyed by fire while in the seller's warehouse on March 14, 1923, after the alleged delivery of them by the seller to the buyer. There was judgment in favor of the buyer, pursuant to a verdict which the court directed. That ruling and certain rulings on objections to evidence are assigned as errors. [1] The court sustained a contention of the buyer that, when the linters were destroyed, they had not been delivered to it and were not its property. The pertinent evidence in this connection was to the following effect:

On March 3, 1923, after the parties had, in communications by telephone and telegraph, agreed on terms of sale of 300 bales of linters, the buyer signed and forwarded to the seller the following instrument, which was signed by the seller on the day of its receipt:

"A. K. Burrow Company, Inc.
"Purchase Contract No. ——.
        "Memphis, Tenn., March 3, 1923.
"To Planters' Oil Mill & Gin Co., Seller, Kosciusko, Miss.: We confirm the following purchase from you:
        "Quantity: Three hundred (300) bales.
        "Product: First cut cotton seed linters.
        "Quality: Subject inspection and acceptance at your mill next Tuesday or Wednesday.
        "Price: 11¼ per lb., f. o. b. cars Kosciusko, Miss.
        "Shipment: Prompt.
        "Terms: Usual.
        "Remarks: ——.
"Rules: Memphis Merchants' Exchange rules to govern; in case of any difference, arbitration to be at a point selected.
        "Accepted:
        "Planters' Oil Mill & Gin Co., Seller.
        "A. K. Burrow Company, Inc.,
            "By R. D. Potts,
            "Per C. A. Jones.
"Date: March 5, 1923.
"Duplicate to be retained by seller."

On the following Tuesday or Wednesday an official of the buyer arrived at Kosciusko. After looking over the cotton seed linters stored in two warehouses of the seller, with the help of two of the seller's employees, he took samples from each of 350 bales of linters, 300 of which were in one warehouse and 50 in the other, attached to each of those bales a tag having on it the buyer's name and a number, and put the samples from each bale, with a coupon detached from the tag on that bale, and having the same number on it and the weight of the bale when it was ginned. After tagging 300 bales in one warehouse, and stating that those were all right, and that he accepted them, he said he would go to the other warehouse and take some more, if it was agreeable. When told that he could get all he wanted, he went to the other warehouse, and in the same way sampled and tagged another 50 bales. After that he stated to the seller's manager that he had found the quality satisfactory and accepted 300 bales he had tagged, and had tagged 50 additional bales which he was willing to accept under the same terms as the original contract, and this was agreed to. He shipped to the buyer at Memphis the samples, numbered and tagged as above stated.

In a communication to a third party, the buyer referred to the linters so sampled and tagged as several hundred bales of cotton linters bought from the seller, and in a letter to the seller referred to them as having been inspected and accepted. Pursuant to instructions given by the buyer on March 9, the seller, after weighing 40 of the 50-bale lot, those weighed having the tag numbers furnished by the buyer, shipped the 40 bales, sent its draft for the price with bill of lading attached, and that draft was paid by the buyer. On March 14 the seller sent to the buyer a letter which stated: "We would appreciate instructions on the first cut linters due you on contract, as we are getting short on storage room." The fire occurred that night. The rules of the Memphis Merchants' Exchange included the following:

"Rule 4. All sales, unless otherwise specified in the memorandum of sale or under these rules, will be for cash. Payment will be made by resident buyers upon presentation of invoice with bill of lading or signed railroad ticket attached, showing delivery of goods to carrier in good order. Collection will be effected from nonresident buyers by demand draft, free of exchange with bill of lading attached, showing delivery of goods to carrier in good order."

"Rule 13. Cotton seed linters shall be governed in sale by special contract.

"Rule 14. Unless specified to the con-

trary, all offers and acceptances will be understood as intended f. o. b. point of shipment, and all transit privileges, if any, shall follow shipment through."

We do not think that the evidence above referred to, or any other evidence adduced, had any tendency to prove that the parties agreed to substitute another contract in the place of the one evidenced by the above set out written instrument. Nothing said or done prior to the fire indicated a consent of the parties that their dealings with reference to the linters be governed by terms other than those stated in that instrument and in applicable rules referred to therein. So far as appears, the subject of terms of sale was not mentioned between the date of the above set out instrument and the time of the fire, except when it was agreed that the buyer was to get 50 additional bales under the same terms as the original contract. The action of an official of the buyer in going to Kosciusko and accepting 300 bales of linters was in pursuance of a provision of the above set out instrument. Until that was done the subject of the contract was not identified. The commodity dealt with being one of varying qualities or grades, the provision for the buyer inspecting and accepting was one for acceptance as to quality, or for identifying the subject of the contract, and a transfer of title from the seller to the buyer would not result from such acceptance, if under the terms of the contract anything further remained to be done by the seller or buyer before title to the commodity passed from the former to the latter. Delaware, L. & W. R. Co. v. United States, 231 U. S. 363, 34 S. Ct. 65, 58 L. Ed. 269.

We think that written memorandum, considered in connection with applicable exchange rules which were to govern shows that the sale contracted for was to be for cash, and that title was not to pass from the seller prior to delivery "f. o. b. cars Kosciusko." If the provision of the memorandum in which the letters f. o. b. were used stood by itself, there might be room for a contention that they were used with reference to price only, as they were used in connection with the word "Price." Detroit Southern R. Co. v. Malcomson, 144 Mich. 172, 107 N. W. 915, 115 Am. St. Rep. 390. But there being nothing in the memorandum inconsistent with the above set out exchange rules 4 and 14 being applicable, the application of those rules had the effect of making the sale contracted for one for cash, and of preventing a consummation of the sale and the passage of title from the seller prior to delivery "f. o. b. point of shipment." Under such an executory agreement, title does not pass prior to the seller making delivery free on board cars as stipulated, and the loss falls on the seller, if the subject of the contract is destroyed prior to such delivery. Schreyer v. Kimball Lumber Co., 54 F. 653, 4 C. C. A. 547; Vogt v. Schienebeck, 122 Wis. 491, 100 N. W. 820, 67 L. R. A. 756, 106 Am. St. Rep. 989, 2 Ann. Cas. 814; 24 R. C. L. 45, 47.

[2] After the fire a representative of the seller, in a telephone conversation with an official of the buyer, suggested that insurance the latter had on cotton it owned would cover the burned linters. The buyer's representative expressed the opinion that its insurance did not cover the burned linters. The buyer informed its insurer of the facts of the transaction, without making any claim that the insurance it had covered the burned linters. The seller complains of rulings excluding evidence as to an agreement between the buyer and its insurer that the latter would protect the former against the claim asserted by the seller in this suit. In the absence of any evidence to support a finding that, when the linters were destroyed, the buyer had title to them, and owed the seller the price of them, the claim asserted by the seller could not properly have prevailed, if the just-mentioned excluded evidence had been admitted. It follows that the exclusion of that evidence was not reversible error.

[3] The seller's title to the burned linters was not affected by a default of the buyer in giving shipping instructions in accordance with rules governing that matter. Under the rules, when such a default by the buyer occurs, the seller may either cancel the contract at the market price or sell the commodity for account of whom it may concern. The remedies given to the seller presuppose his continued ownership of the subject of the contract. The claim asserted in this case by the seller was not helped by evidence as to the buyer's failure to give shipping instructions, when they should have been given.

We conclude that the court's instruction to find in favor of the buyer was proper, because the evidence adduced showed that the title to the 310 bales of linters was not acquired by the buyer, and it did not become liable to the seller for the agreed price of them, the stipulated delivery not having been made.

The judgment is affirmed.