FALLS INDUSTRIES, INC., Appellant,

v.

CONSOLIDATED CHEMICAL INDUS-
TRIES, INC., and D. C. Hall Trans-
port, Inc., Appellees.

No. 16887.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1958.

Victor A. Sachse, Breazeale, Sachse, Wilson & Hebert, Baton Rouge, La., for appellant.

C. W. Phillips, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., Robert A. Ainsworth, Jr., New Orleans, La., Calvin E. Hardin, Jr., Baton Rouge, La., Ainsworth & Ainsworth, New Orleans, La., Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., of counsel, for appellees.

Before RIVES, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is a three-cornered dispute involving a seller, a buyer, a carrier—and goods damaged in transit. Besides the basic question of liability, the appeal presents a serious procedural question: Is a third-party defendant properly before this Court on appeal, when the original plaintiff did not assert a claim against the third-party defendant by amending its complaint or by filing a new pleading and the third-party plaintiff has not appealed from the judgment of the lower court dismissing the third-party action?

Falls Industries, Inc., the manufacturer-seller, filed suit against Consolidated Chemical Industries,[1] the buyer, in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana. Object of the suit was to recover the balance due on the purchase price ($4,913.23) and the cost of repairing three heat exchangers purchased by Consolidated, damaged in transit, repaired by Falls ($21,873.97). Consolidated removed the suit to the District Court for the Eastern District of Louisiana, then brought a third-party action, under the Carmack Amendment to the Interstate Commerce Act, against D. C. Hall Transport, Inc., the connecting carrier. 49 U.S.C.A. § 20(11).

The district court, sitting without a jury, denied Falls' claim against Consolidated. The court found that Falls had breached its contract to crate and skid the heat exchangers so that they would be shipped securely "without breakage". Falls, therefore, could not recover from Consolidated the balance due on the purchase price or the cost of repairs necessary to put the equipment in usable condition. Consolidated's claim against Hall Transport, the third-party, was dismissed "without prejudice to any claim which Falls Industries or Consolidated may have against [the] carrier".

Consolidated, the buyer, contends that in the pretrial conferences, during the trial, and on this appeal, the real quarrel has always been between Falls, the seller, and Hall Transport, the carrier. Falls contends that the carrier is responsible for the goods being damaged, and that Consolidated's reliance upon the damaged condition of the equipment might support its demand as third-party plaintiff against the carrier, but it is not a valid defense against Falls' demands. Hall Transport contends that the damage was caused by Falls' failure to "crate, brace, and cushion the exchangers properly"; that Falls' has never asserted any claim whatever against it, that Consolidated has not appealed from the judgment dismissing its third-party complaint, that the unappealed judgment in favor of the third-party defendant is not here subject to review and, consequently, Hall Transport is not properly a party to this appeal.

I.

Falls manufactures chemical processing equipment at its plant in Solon, near Cleveland, Ohio. February 3, 1954 Consolidated ordered from Falls, for delivery to its Baton Rouge plant, three heat exchangers to be fabricated according to the purchaser's plans and specifications. The price was $12,500 each, f. o. b. Solon, Ohio.

Consolidated's purchase order, accepted April 1, 1954, contained the following provision:

1. By stipulation Stauffer Chemical Company was substituted as a party defendant in place of Consolidated Chemical Industries, Inc., because the two corporations were merged after issue was joined.

"Delivery: 50 to 60 days from receipt of verbal order and approval to fabricate. *To be securely crated and skidded so as to be shipped without breakage.*

"Guarantee: Falls Industries guarantee materials and workmanship for a period of one year after receipt and acceptance of the exchangers."

Correspondence between Falls and Consolidated spelled out the seller's obligation to pack and ship the goods.

Each heat exchanger consists of 685 brittle graphite tubes housed in what is known in the industry as a Haveg shell. This shell is four feet in diameter, ten feet long, an inch and a half thick, and weighs about 1,400 pounds. It is made of a plastic material impregnated with asbestos. The shells were manufactured by the Haveg Company of Marshalltown, Delaware, and sold and shipped to Falls at Solon, Ohio. When shipped to Falls, each shell was skidded on a separate cradle consisting of two wooden crosspieces, notched so that the rounded form of the shell rested in the notches. Two runners connected the crosspieces. After fabrication by Falls, the total weight of a heat exchanger, including its steel collar, is 5,200 pounds. The assembled unit, though large and heavy, is fragile and must be air-tight and water-tight.

When Falls cradled and skidded the heat exchangers, it used the same cradles used by the Haveg Company in shipping the empty shells, but it made certain modifications to compensate for the added weight of the fabricated exchangers. Because the steel collar exceeded the shell by several inches in diameter, the cradle was raised to compensate for the overhang. This was done by adding an additional longer runner under each of the two original runners. Then a 4 x 4 was placed under the steel collar perpendicularly between the runners so as to brace the added overhang. An additional 4 x 4 was bolted under each crosspiece to give it support. Each exchanger was bound onto its skid by one inch steel bands.

Falls employed Hayes Motor Freight Lines to make the shipment by motor carrier, and paid for the exclusive use of the trailer in which the exchangers were loaded.[2] Hall Transport was the connecting carrier.

June 7, 1954, the heat exchangers, cradled and skidded, were loaded by employees of Falls into a 35-foot trailer of the Hayes Freight Lines. The heat exchangers, with their skids, were almost twelve feet long so, with the exception of space on each side, every available portion of the trailer was taken up by the heat exchangers. The runners rested directly on the bottom of the trailer. They were cleated into place by the Hayes driver. Witnesses for Falls testified that shipments similarly loaded had been made safely for ten years. They testified also that the method of shipment was plainly visible to the Hayes driver who signed the bill of lading: the shells, the graphite tubes, the way the skids were made, how the exchangers were cushioned, how the exchangers were fastened to the skids. The trailer was sealed, and the seal not broken until the exchangers were unloaded at Baton Rouge. The drivers testified that the trip was uneventful.

When the trailer was opened June 10, 1954, one heat exchanger was visibly damaged. The Haveg shell was crushed. Repairs to the damaged exchanger were made at the plant in Baton Rouge by employees of Falls. The three exchangers were then placed in operation.

2. Testimony of W. C. Littleton, manager of the Minnoe, Louisiana, terminal manager for Hall Transport: "Q. What is the advantage that the shipper gets from the exclusive use of a trailer? A. Well, they load and unload their own merchandise. Exclusive use means that they have bought and paid for every amount of space inside that trailer. You can't open it and add additional freight to it. They do their own packaging and loading, and they do everything. In other words, that is their responsibility."

Later, it was discovered that none of the exchangers functioned properly. An inspection by employees of Falls showed that all exchangers had damaged graphite tubes requiring the replacement of 1,042 tubes. The exchangers were repaired and put in operation once more, but they have never functioned to the complete satisfaction of Consolidated.

The purchase price of the exchangers was $37,500. The cost of repairs was $21,873.97. After suit was filed, the parties agreed that Consolidated had expended sums totalling the balance due on the purchase price.

The trial court found that there was nothing in the record to indicate that the carriers, through their drivers, were guilty of negligence "in connection with the shipment in suit". The court found that Falls had failed to skid and cradle[3] the shipment properly; the added weight of the exchangers after complete fabrication caused the collapse of nearly every weight-bearing portion of the cradle that rode over the trailer axle. Instead of placing the added support under the new weight-bearing parts, the crosspieces were allowed to remain in a position most favorable for shipping empty shells. The support was insufficient.

The district court held that this failure to skid and cradle properly, together with any inferior workmanship that may have existed was the proximate cause of the damage. "By such failure", said the court, "Falls Industries breached its contract with Consolidated since it specifically agreed properly to cradle and skid the shipment and to guarantee against defective material and workmanship[4] for one year."

## II.

A. Falls invokes the doctrine that risk of loss follows the title. Generally, title passes to the buyer on the seller's delivery of the goods to the carrier, and if the bill of lading provides for a sale f. o. b. point of shipment, it is difficult for a buyer to avoid the usual consequences that attach to passage of title. United States v. R. P. Andrews & Co., 1907, 207 U.S. 229, 28 S.Ct. 100, 52 L.Ed. 185; Planters Oil Mill & Gin Co. v. A. K. Burrow Co., 5 Cir., 1925, 10 F.2d 312; Commissioner of Internal Revenue v. East Coal Oil Co., 5 Cir., 1936, 85 F.2d 322; 46 Am. Jur., Sec. 442, p. 608.

The rule is not without exception. It "does not apply where a contrary intention of the parties is apparent * * * for example * * * under a contract requiring delivery to the buyer in 'merchantable shape' ". 46 Am.Jur., Sales, Section 442. Thus, in Gibson v. Inman Packet Co., 1914, 111 Ark. 521, 164 S.W. 280, the Arkansas Supreme Court held that a contract for delivery of cotton "in merchantable shape" indicated an intention that title would not pass until the cotton arrived "in merchantable shape". Similarly, here the contract was for delivery of equipment "without breakage". We must look to the provision of the contract to see when the parties intended title to pass. The Fred E. Hasler, 2 Cir., 1933, 66 F.2d 609.

3. James Todd, plant manager at Consolidated's Fort Worth plant, testified that the cradle should have been placed under the tube skirts so as to support the added weight. He said that when the cradles were placed nearer to the center, the shell was in tension without any support behind the portion of the shell resting on the cradle. W. H. Daspit, plant manager at Consolidated's Baton Rouge plant, testified that he would not have cradled the shells at any other point other than under the tube sheet. Peter Nardi, Vice President of Falls Industries, said that the heat exchangers were not cradled and skidded in the manner that their chief engineer thought best.

4. There was evidence that the graphite tubes were improperly cemented and leaked, because of poor workmanship. The district court found it unnecessary to determine just what portion of the repairs was attributable to poor workmanship.

■ We think that the provisions of the contract between Falls and Consolidated show that the parties intended title not to pass until the exchangers arrived and it could be determined that they had been shipped in such a manner that there would be no breakage attributable to the seller. Certainly it was not the intention of the parties that Consolidated assume the risk of improper crating, skidding, and loading by Falls. See Troy Refining Corp. v. Slagter Oil & Grease Co., D.C.Ky.1945, 61 F.Supp. 369. Title is never in limbo. Title was in Falls until it passed to Consolidated on acceptance of the exchangers. Consolidated accepted title to exchangers that would be in workable condition according to the plans and specifications of the contract. The risk of loss must be borne by the holder of the title when the goods were damaged—Falls Industries. See Srybnik v. Epstein, 2 Cir., 1956, 230 F.2d 683.

■ B. That is one approach to the question at issue. We think that it answers Falls' argument on passage of title. The district court took the view—the better approach, we think—that regardless of passage of title, the seller may not recover upon a contract it has, itself, breached, nor can the seller collect for cost of repairs for damage to goods which it has, itself, caused by violating the contract.

Under the contract, the seller agreed that the exchangers would be "securely crated and skidded so as tp [sic] shipped without breakage". The parties interpretation of this obligation was set forth in the correspondence. The chief engineer at Falls wrote to Consolidated May 14, 1954, in part, as follows:

"Since our men would be directly responsible for the loading, we would naturally assume the responsibility for loading the material into the trucks."

May 24, 1954, he described exactly how the shipment would be handled:

"We are planning to cradle each unit on a sturdy skid. The units will be securely bound into the cradle. A thick cushion of rubber gasket material will be provided between the shell and the wooden cradle. The entire cradle will then be 'floated' either on a heavy bed of excelsior or a heavy cushion of rubber. The rubber and excelsior will absorb the road shock. The cradle will be well braced and shored in the trailer body to prevent movement."

Consolidated replied to this correspondence by letter of May 28, 1954:

"Many thanks indeed for your air mail letter of May 24 * * * your letter of May 24 is very encouraging, coupled with your letter of May 14 and we are going to leave this in your good hands and *the responsibility will be yours to properly load these coolers into the truck, pack and prepare them for safe arrival* at Baton Rouge * * * "

As the trial judge pointed out, "the shipment was not 'floated either on a heavy bed of excelsior or a heavy cushion of rubber' to absorb the road shock, and the 'thick cushion of rubber gasket material' between the shell and the wooden cradle turned out to be a single layer of 1/8 inch rubber sheeting". The district court found that in using the same skids on which the shells had been received from the Haveg Company, Falls had failed to place adequate supports under the weight bearing parts of the exchangers. This, with the inadequate cushioning, and "inferior workmanship which may have existed in the exchangers at the time of the shipment, was the proximate cause of the damage".

■ After a careful study of the record and the exhibits, we cannot say that the trial judge's findings are clearly erroneous. Boh Brothers Construction Co. v. Perry Heavy Haulers, D.Ct.La.1947, 72 F.Supp. 102, affirmed 5 Cir., 1948, 166 F.2d 719. We believe that these findings clearly support the district court's holding as to Falls claim against Consolidated. This is not at all to say,

as Falls argues, that the court is attempting to make the seller an insurer or guarantor of safe delivery of goods shipment. It is only to hold that the seller must comply with its contract to pack and load properly *at the point of shipment.* Falls' failure to do so was a breach of the contract and was the cause of the damage to the exchangers.

■ C. The district court reserved whatever rights the original parties had under the Carmack amendment against Hall Transport, the third-party defendant. There may be no rights. If, however, the defects in packing and loading the exchangers were plainly visible and if the carrier inspected and knowingly accepted goods improperly crated, or improperly loaded, Falls might have a claim against the carrier for that part of the damage to the exchangers not attributable to poor workmanship. There is a great deal of evidence on this issue in the record, and it is argued in the briefs. This issue between Falls and Hall Transport is open. It was not decided by the trial judge, and its determination in this case depends on Falls' right to assert it against the third-party defendant without amending its pleadings.

### III.

The procedural question turns on whether the plaintiff has asserted a claim against Hall Transport within the meaning of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The point was not briefed in the original briefs filed by Falls and Consolidated. It is raised but not argued in Hall Transport's brief. All three parties filed briefs after the oral argument. Hall Transport contends that under Rule 14 (a) the plaintiff must amend or file a new pleading. Falls contends that under Rule 15(b) the complaint should be treated as if amended. Consolidated contends that the three parties have always recognized that the real dispute lay between the shipper and the carrier, that all of the issues have been tried except quantum, that the pleadings should be deemed amended to conform to the proof.

■ Rule 14, permitting third-party impleader is intended to liberalize and simplify federal procedure.[5] It is patterned on Admiralty Rule 56, 28 U.S.C.A. Its purpose is to reduce litigation by having one lawsuit do the work of two.[6]

As originally adopted, Rule 14(a) provided for impleader of a third person who might be liable to the defendant

5. Rule 14(a) now reads, in full:
"When Defendant May Bring in Third Party. Before the service of his answer a defendant may move ex parte or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. If the motion is granted and the summons and complaint are served, the person so served, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13. A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant."

6. Prior to adoption of the federal rules, impleader had been used in England (Eng.Sup.Ct.O. 16A., rules 1–13, 1 Annual Practice 1958), several states (Louisana, New York, Pennsylvania, Wisconsin), and in admiralty practice.

*"or to the plaintiff* for all or part of the plaintiff's claim". The rule read, in part:

"When Defendant May Bring in Third Party. Before the service of his answer a defendant may move ex parte or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable to him [*or to the plaintiff*] for all or part of the plaintiff's claim against him. * * *"

"The plaintiff may *amend his pleadings to* assert against the third-party defendant any claim which the plaintiff might have asserted against the third-party defendant had he been joined originally as a defendant. * * *"

The bracketed and italicized words were deleted when the rule was amended.

▉ Rule 14 was amended in 1946, effective March 19, 1948, to eliminate the provision for impleader of a person liable *to the plaintiff*.[7] But the plaintiff is still permitted to assert a claim against the third party arising out of the same transaction as the subject of the original suit. The words "may amend his pleadings" were deleted. The rule now reads, in part:

"When Defendant May Bring in Third Party. Before the service of his answer a defendant may move ex parte or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. * * *

"The plaintiff may assert any claim against the third-party de-

fendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counter-claims and cross-claims as provided in Rule 13. * * *"

Under the prior jurisprudence, where the third-party defendant was liable directly to the original plaintiff, amendment was held unnecessary—notwithstanding the words "may amend his pleadings". In such cases the third-party complaint was said to present an issue between the third-party and the original plaintiff. Atlantic Coast Line R. Co. v. United States Fidelity & Guaranty Co., D.C.Ga.1943, 52 F.Supp. 177, 185; Lommer v. Scranton—Spring Brook Water Service Co., D.C.Pa.1944, 4 F.R.D. 104.

So far as we have been able to find, federal courts have not passed directly on the necessity of an amendment or a new pleading when the third-party may be directly liable to the original plaintiff and the parties accept this as an issue in the case.

In United States v. Lushbough, 8 Cir., 1952, 200 F.2d 717, 721, the court stated:

"We think the judgment against Hoffman [*the third-party defendant*] in favor of Lushbough [*the original plaintiff*] must also be reversed. Lushbough brought no action against Hoffman, asked for no judgment against him. Rule 14(a) of the Rules of Civil Procedure, 28 U.S.C. provides that: 'The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party

---

7. "To summarize the foregoing change, it may be said that under Rule 14 as originally framed the defendant might have brought in as a third party defendant either a person who was secondarily liable to him or a person who was pri-

marily liable to the plaintiff. Under the 1948 amendment only a person who is secondarily liable to the original defendant may be brought in." 1 Barron and Holtzoff, Federal Practice and Procedure, Sec. 471, p. 837.

plaintiff". Lushbough asserted no claim against Hoffman."

The Lushbough case however did not turn on this point. The result rested upon the specific language of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., the conclusiveness of a judgment when the successful claimant sues his employer after recovering in a suit against the United States.

Louisiana and Maryland have a third-party practice procedure. In Ferrantelli v. Sanchez, La.App.1956, 90 So.2d 351, the court noted that Rule 14(a) is almost identical with the pertinent Louisiana statute, (LSA–R.S. 13:3381). Citing the Lushbough case. The court held that the plaintiff must assert his claim against the third-party defendant by filing additional pleadings. The Maryland statute is stronger than Rule 14(a) or the Louisiana statute, since it provides that the "Plaintiff *shall* amend his pleadings to assert against the third-party defendant any claim". Code 1939, art. 50, § 27(a) as added by Laws 1941, c. 344. In Brotman v. McNamara, 181 Md. 224, 29 A.2d 264, 268, the Court stated: "It would be better practice to follow the Act and amend the declaration, but if no objection is made, and the parties all go to trial on the original declaration and the declaration of the third party plaintiff, any right by anyone to have the original declaration amended has been waived." In effect, the Maryland court applied the liberal principles embodied in Rule 15, F.R.C.P.

In Patton v. Baltimore & Ohio R. Co., 3 Cir., 1952, 197 F.2d 732, 743, Mrs. Patton sued the Baltimore & Ohio R. Co. for compensation for the death of her husband. The Baltimore & Ohio R. Co. filed a third-party complaint against the Duquesne Slag Products Co. The plaintiff's complaint contained no allegations of negligence on the part of Duquesne, nor was the complaint amended to assert any claim against Duquesne. For other reasons, the court held that the plaintiff could not maintain suit against Duquesne, but the court said:

"We would permit the application of Rule 15(b), FRCP, since we have found the evidence was adequate to prove Duquesne negligent, and would permit the court below to treat the complaint as amended to comply with the proof, if the judgment against Duquesne could be sustained. But in view of the fact that a new trial must be ordered, this salutary rule cannot be applied."

Rule 15(b) provides, in part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

"Rule 15 is one of the most important of the rules that deal with pleadings. It re-emphasizes and assists in the attaining the objective of the rules on pleadings: that pleadings are not an end in themselves, but are only a means to the proper presentation of a case; that at all times they are to assist, not deter, the disposition of litigation on the merits." 3 Moore's Federal Practice, Sec. 15.02, p. 804.

Amendments to conform to proof are permitted under Rule 15(b) in order to bring the pleadings into line with the issues actually developed during the trial even though the issues were not adequately presented in the pleadings. 1 Barron and Holtzoff, Federal Practice and Procedure, Section 449, p. 917. The prime purpose of 15(b) is to avoid the necessity of new trials. But an amendment may be made at any time and as Moore says, "the only qualification to the rule is that federal jurisdiction be neither enlarged nor restrict-

ed". 3 Moore, Federal Practice, Section 15.02, p. 805.

The third-party complaint in this case alleges that Consolidated was unable to determine whether damage to the heat exchangers was the plaintiff's fault or the third-party's fault or their joint fault. Hall Transport filed an answer to the third-party complaint denying liability and "further answering, the third-party defendant denies that it is responsible to either original plaintiff or to third-party plaintiff and *denies that it was or is indebted unto original plaintiff or third-party plaintiff.*" The third-party alleged that damage to the exchangers was the fault of Falls. Rule 14 permits the third-party defendant (1) to "assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim" and (2) to "assert any claim against the plaintiff arising out of the transaction". The third party went further and filed an answer to the original complaint making allegations and asserting defenses that would be applicable only on the basis that the third-party complaint in itself enlarged the pleadings by placing the original plaintiff in the position of asserting a claim against the third party. The answer states that the original complaint "fails to state a claim against the third-party defendant upon which relief can be granted"; that the damage "was not due to any fault or negligence or acts of commission of third-party defendant"; that Falls' failure to comply with its contract and failure "in properly crating, bracing and cushioning the said heat exchangers for shipment bars any recovery herein by said original plaintiff *from anyone*"; that "Falls was guilty of contributory negligence in connection with the manufacture of and the loading and crating and cushioning of the said heat exchangers which said contributory negligence is especially pleaded alternatively, as aforesaid, against Falls Industries, Inc., in bar of its right to *recover anything from anyone herein*".

The record shows that Falls introduced a great deal of evidence to show that the carrier's drivers took over the responsibility of loading the exchangers, supervised the job, overruled Falls' employees on the manner of loading the truck, had full knowledge of the fragility of the exchangers, and had full knowledge of exactly how the exchangers were being crated and skidded and cushioned. Hall Transport countered with testimony to the contrary. In its brief, Falls argues that "the carrier's driver * * * observed everything that was done * * * actually participated * * * and the packing and loading was entirely revealed to the carrier * * * all packing—that is, the wood cradle, metal strips and padding were as visible to the carrier as to the shipper". Both briefs cite a number of authorities on the liability of the carrier to the shipper for damages caused by apparent defects in packing.

 There is no objection in the record stating that the third-party defendant objects to evidence showing its liability to the original plaintiff. A fair reading of the pleadings and the record supports Consolidated's position that all the parties recognized that the real dispute lay between Falls and Hall Transport, and that all of the issues have been tried except quantum. The third-party defendant not only answered the third-party complaint, but in a separate pleading undertook to answer categorically the original complaint and asserted all of the defenses it could have asserted had the plaintiff amended its complaint and alleged a claim against the third-party. This answer amounts to a waiver of the amendment.

Federal Courts are moving away from the mechanical application of rules of procedure. The first rule of federal procedure, Rule 1, provides that "These rules * * * shall be construed to secure a just, speedy, and inexpensive determination of every action". Rule 8(f) states that "All pleadings shall be so construed

as to do substantial justice". Pleadings are subsidiary; they serve the ends of justice by giving notice of the issues to be litigated. Here, the parties litigated the issues between them just as if there had been actual notice through an amendment to the complaint stating in terms the plaintiff's claim against the third-party defendant.

The procedural question raises conflicting reactions. There is much to be said for the necessity of a pleading in order to define a claim. For example, here, what claim did Falls assert against Hall Transport? How much? There is some merit to the argument that the Amendment to Rule 14(a) is designed to prohibit the very thing proposed here— a tender by the defendant of another defendant to the plaintiff; although such tender can hardly be avoided when there is one transaction giving rise to a three-cornered dispute that settles down to an argument between the plaintiff and the third-party defendant as to liability. We believe however, whatever doubts there might be, that justice will be served if we follow the decision of the parties to treat the complaint as having been enlarged: (1) by the third-party defendant's answer that is in the nature of a waiver of formal amendment and (2) by the proof at the trial, where there was no objection made to evidence that would have bearing only on the issue of carrier liability to the shipper.

We think that there is sufficient evidence in the record for the trial judge to have decided the issues between Falls and Hall Transport. In the interest of complete fairness, however, we believe that the parties should have the opportunity to offer additional evidence bearing on the issue of carrier liability, if any, to the plaintiff.

Accordingly, we affirm the judgment of the district court dismissing the complaint against Consolidated Chemical Industries, Inc., and we remand the case to the district court for further proceedings not inconsistent with this opinion.