ÁNGEL PARRILLA GARCÍA and CÁNDIDA RODRÍGUEZ ET AL., Plaintiffs and Appellees, *v.* WATER RESOURCES AUTHORITY, Defendant and Appellant. WATER RESOURCES AUTHORITY, Third-Party Plaintiff, Appellant and Appellee, *v.* LUIS A. RIVERA, d.b.a. RIVERA CONSTRUCTION Co., INC., and ADJUNTAS DEVELOPMENT CORPORATION, Third-Party Defendants, Appellants and Appellees.

Nos. R-63-235, R-63-239, R-63-243.     Decided March 26, 1965.

*José Antonio Arabía* and *Carlos M. Díaz Lamoutte* for the Water Resources Authority. *José M. Salicetti* for Adjuntas Development Corporation. *Carlos E. Colón* for appellees. *Rivera Zayas, Rivera Cestero & Rúa* for Luis A. Rivera, d.b.a. Rivera Construction Company.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The Water Resources Authority was sued as a result of two accidents which occurred on September 28, 1961. In one, an employee of the Puerto Rico Communications Authority sustained injuries while repairing some telegraph lines in the city of Ponce. In the other, an employee of the Puerto Rico Telephone Company was electrocuted when climbing a pole to repair some telephone lines at kilometer 18 of the Ponce-Adjuntas road. The communication lines (the telegraph line and the telephone line) conducted the electric power which caused the accidents when some high-tension wires of the Water Resources Authority came in contact with the former in the outskirts of the town of Adjuntas. At that place the electric lines crossed the communication lines.

On both sides of the road where the lines came in contact, work was being performed in the leveling and compacting of the land for the construction of an urbanization. The proposed urbanization had not yet been approved by the competent agencies. The electric lines crossed the premises where the land was being removed. For that reason request was made to the Water Resources Authority to relocate its lines so that they would be parallel with the communication lines. On July 10, 1961, a Water Resources Authority supervisor visited the land where the work was being performed and discussed the question of the relocation of the lines with the person in charge of the leveling work. He promised to submit an estimate, but did not do so. The accidents in question occurred on the following September 28. The trial court sustained the complaint filed against the Water Resources Authority on the ground that "the accidents were due to the fault or negligence of defendant which, knowing of the extremely hazardous condition created by the proximity of its high-voltage lines which crossed those of the Puerto Rico Communications Authority and of the Puerto Rico Telephone Company, did nothing to correct the hazardous condition and thus avoid the accidents until after their occurrence." The Water Resources Authority filed a third-party complaint against Rivera Construction Company, the firm which was removing the land, and the Adjuntas Development Co., owner of the lands.

In deciding this controversy the trial court concluded that the owner of the land was not liable, but that the firm in charge of leveling the land was bound to pay to the Water Resources Authority "a sum of money equivalent to thirty (30) percent of the total sum which the latter is or may be bound to pay to plaintiffs in these cases, including the sum awarded for attorney's fees, costs, and legal interest up to the day of payment." It based this judgment on its determination that "the conduct of the employees of Luis

A. Rivera, doing business under the name of Rivera Construction Company, was negligent. They had personal knowledge, and were also informed by Faustino Torres, of the existing danger that the Water Resources high-voltage lines might come in contact with those of Puerto Rico Telephone Co. and of the Puerto Rico Communications Authority, and did nothing and took no action to correct the situation after the conversation between Pietri and Antongiorgi. This negligence contributed effectively to the occurrence of the accidents. . . . This negligence is of a lesser degree than that of the Water Resources Authority, and the court is of the opinion that it contributed 30 percent to the occurrence of the accidents on September 28, 1961."

At plaintiffs' request, the two cases (consolidated) against the Water Resources Authority and that of the third-party complaint were heard separately before the trial court. Two separate judgments were rendered. Three petitions for review were interposed against these two judgments. One, to review the judgment in the case against the Water Resources Authority and to review the judgment entered in the case of the third-party complaint, both parties petitioned for a writ of review. The three writs requested were issued, after which we decided to consolidate them. We shall dispose of them as if it were only one petition.

The Authority maintains that the only one responsible is the third-party defendant, and the latter that the Authority is the only one liable. Both challenge the amount of indemnity awarded.

The trial court, we have seen, held that the Water Resources Authority was liable on the ground that, "knowing of the extremely hazardous condition created by the proximity of its high-voltage lines which crossed those of the Puerto Rico Communications Authority and of the Puerto Rico Telephone Co., did nothing to correct the condition and avoid the accidents until after their occurrence." It based the third-

party defendant's liability on the fact that "they had personal knowledge, and were also informed by Faustino Torres, of the existing danger that the Water Resources high-voltage lines could come in contact with those of Puerto Rico Telephone Co. and of Puerto Rico Communications Authority, and did nothing and took no action to correct the situation after the conversation between Pietri and Antongiorgi."

The imposition of liability on the third-party defendant on the grounds set forth in the judgment appealed from is evidently incorrect. The fact that it had knowledge of the hazard involved if the electric power lines should come in contact with the communication lines did not make it the duty of the latter to correct the existing situation. The electric lines were not under its control. They were under the exclusive control of the Water Resources Authority. It is fitting to examine the evidence in order to determine who should be held liable for the occurrence, since the trial court based its conclusion solely on the fact that both the defendant and the third-party defendant had knowledge of the existing hazardous condition created by the proximity of the electric lines to the communication lines and did nothing to correct it. But the fact is that the accident was not due to the existing hazardous condition owing to the proximity of the lines, but to the evident fact that on the day of the accident the electric lines came in contact with the telegraph and telephone lines. What was the cause for their coming in contact? Who is responsible for that fact? Let us examine the evidence. On July 10, 1961, Antongiorgi, a Water Resources Authority supervisor, visited the place where the third-party defendant was removing the land. There he spoke with Pietri, supervisor of the works. Pietri showed him the two poles which it was necessary to relocate and explained to him the existing condition respecting the electric and the communication lines. He told him about the proximity of

one and the other, and about the danger which it represented in the event one of the crossarms which supported the electric lines should break. Antongiorgi observed the existing conditions, including one of the poles which it was necessary to remove and which afterwards, as a result of its having changed position, caused the contact which resulted in the accidents object of this suit. The pole in question was standing on a mound four or five meters in diameter. The pole stood in the center of this mound. Evidently there was no danger of displacement at that time.

How did the situation of the land where the pole was standing change after the conversation between Pietri and Antongiorgi? There is nothing in the evidence to establish that the lines came in contact as a result of the breakage of one of the crossarms which supported the electric lines. Let us examine Pietri's testimony. He was asked whether the land is "in the same condition as it was when you and Antongiorgi visited the place." He answered to this question, "well, perhaps not in the same condition because the erosion varies, as well as the topography of the land." In answer to the question whether he had observed the mound where the pole was standing on September 29, the day after the accident, he said that he observed it closely. Then he was asked, "Had not that mound become smaller carrying the pole on its way?," and he answered "It had changed somewhat." Upon insisting on the question, he answered "The mound is practically rock and one could see that it had changed somewhat." Then he was asked whether it had changed, and he answered "Simply there had occurred a slide. Yes, sir, it slid downward . . . it slid somewhat to one side." He asserted what the trial court determined, that he left a mound approximately five meters in diameter. The defense attorney then said to him, "What I wish to say is that you left five meters because you figured that it was safe, but that afterwards the mound was displaced downward and sideward."

To which he commented, "Yes, that's correct." It is well to note at this point that the trial judge apparently placed great emphasis, practically based his ruling, on a photograph of the place where the pole was standing taken the day after the accidents. According to that photograph, apparently the position of the pole was normal. When Pietri was asked whether the displacements to which he referred in his testimony appeared in the photograph, he asserted "No, it is not noticeable here," referring to the photograph. And he had testified before that when he visited the scene of the accident the day after the occurrence, he had seen the pole tilted. Thus, evidently the photograph does not show the existing situation on the day after the accident.

The evidence presented clearly showed that the electric lines came in contact with the communication lines as a result of the work which was being performed by Rivera Construction. The displacement of the pole as a result of the work being performed on the land was the cause of the contact. Admitting that the electric and the communication lines were at a short distance from each other, the accident would not have occurred except for the intervening act of Rivera Construction causing the displacement of the pole.

As we stated in *Ginés v. Aqueduct and Sewer Authority*, 86 P.R.R. 490 (1962), "a new unforeseeable force breaks the chain of causality." The Water Resources Authority had the right to expect that Rivera Construction would not continue working around the pole. The project, as stated before, had not yet been approved by the competent agencies. The voluntary act of Rivera Construction intervened between the Authority's negligent conduct and the damage sustained by plaintiffs.

In view of the foregoing, the judgment rendered in the case against the Water Resources Authority should be reversed and, consequently, the judgment rendered in the case brought by the Water Resources Authority against Rivera

Construction Company should likewise be reversed. This calls for an explanation. Rule 12.1 of the Rules of Civil Procedure of 1958 provides that "a defendant may, as a third-party plaintiff, serve a summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." The 1958 version amended the provisions of the corresponding Rule of 1943. The former provided that "Before the service of his answer a defendant may move *ex parte* or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable to him or *to the plaintiff* for all or part of the plaintiff's claim against him." (Italics ours.) The amendment eliminated the provision permitting defendant to file a complaint against a third party to be liable to the plaintiff only. According to the existing version, he must be liable to defendant although he may also be liable to plaintiff. 1A Barron and Holtzoff, § 421 (1960 ed.). The Rule, however, preserved plaintiff's right to "assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of his original claim in the action, and the third-party defendant thereupon shall assert his defenses as provided in Rule 10 and his counterclaims and cross-claims as provided in Rule 11."

The Rule did not provide the manner for asserting such claim.

■ The purpose of Rule 12.1 as well as of all the Rules of Civil Procedure, both of 1943 and of 1958, is to simplify and expedite the proceedings in order to dispense speedy and less costly justice within the resources of all persons. Rule 1 expressly provides that "they shall be construed to secure the just, speedy, and inexpensive determination of every action."

■■ There is nothing in Rule 12.1 requiring a formal amendment of the pleadings by plaintiff in order that he may be able to assert his claim against the third-party defendant. If as a result of the pleadings an issue is joined between plaintiff and the third-party defendant, and during the hearing of the case plaintiff presents evidence against the third-party defendant and the latter has an opportunity to cross-examine the witnesses and to present opposing evidence, the pleadings must be deemed amended for the purpose of asserting a direct claim by plaintiff against the third-party defendant. Rule 13.2 authorizes amendments to conform the pleadings to the evidence. Rule 12.1 should be construed in the light of the provisions of Rule 13.2. As stated by Feldman in an article entitled A Puzzle under the Federal Impleader Rule, 34 Tul. L. Rev. 77 (1959):

"A theory that does not require a formal amendment of the complaint [by plaintiff] as the exclusive method of asserting a claim against the third party defendant is a realistic answer to the puzzle. Procedure tenets should not be feeble pawns, dominated by a formula that must be followed to the letter. A burdensome system of procedure only tends to wage war on the true goal of the lawsuit."

The corresponding rule of the Federal Rules of Civil Procedure has been thus construed. *Falls Industries, Inc.* v. *Consolidated Chem. Indus., Inc.*, 258 F.2d 277 (5th Cir. 1958); *Patton* v. *Baltimore & O. R. Co.*, 197 F.2d 732 (3d Cir. 1952); Barron and Holtzoff, § 426, n. 62, p. 98 (Supp. 1964).

We thus construed it in *Viñas* v. *Pueblo Supermarket*, 86 P.R.R. 31 (1962). In reversing the judgment appealed from, we rendered another for plaintiff and against the third-party defendant notwithstanding the complaint had not been amended in order to join him as a defendant, since the latter "answered not only the third-party complaint but also set up allegations against the original com-

plaint, and . . . plaintiff introduced incriminating evidence against both—the defendants and the third-party defendant—" since "our failure to do so would tend to exalt a procedural nicety to elude full justice."

■ However, in the present case plaintiff requested that the hearing of the cases against the Water Resources Authority be held separately from the action brought by defendant against the third-party defendant. The court granted it.[1] The reason for that request made by plaintiffs cannot be explained. The complaint against the Water Resources Authority was filed on July 10, 1962. The latter's answer was filed on the following July 26.[2] The third-party complaint was filed on August 31, and the answers to the latter were filed on October 8 and 10. Thus, the two actions were ready for setting three months after the filing of the original complaint.[3] The judge rendered judgment in the original cases on August 23, 1963 and in the case of the third-party complaint on the following September 12. The purpose of Rule 12.1 permitting third-party complaints is precisely to litigate in one single case everything concerning the incident which gave rise to the action brought, in order to save time and make litigation less costly. To hold two hearings, when the evidence could have been presented in only one, has no sense, particularly since from the allegations of the third-party complaint there was a possibility, if they could be supported with the evidence, that the third-party defendant

---

[1] Rule 17.2 of the Rules of Civil Procedure provides:

"The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice; and it may render judgment on a claim of or against one or more parties according to the terms of Rule 44.2."

[2] The trial of the original complaint was set for September 20. The third-party complaint had been filed by that date.

[3] The dates refer to the case of Cándida Rodríguez which is the most important of the two cases filed against the Water Resources Authority.

would be the only one liable. And we have already seen that it was so established by plaintiff's evidence. At the opening of the hearing of the case against the third-party defendant, Rivera Construction Co. moved for an order to the effect that the evidence presented in the original case against the Water Resources Authority should not be considered as evidence against the latter. The court so held. It was the proper thing.

■ Since the hearings of the cases were held separately, the third-party defendant did not have an opportunity to challenge plaintiff's evidence holding him liable. Thus, although the evidence presented in the first case establishes the liability of Rivera Construction, the fact is that the latter was not a party in that litigation, not having therefore an opportunity to defend itself. This precludes us from rendering judgment against the third-party defendant and in favor of plaintiff. The disposition which we have made of these cases does not prejudge at all the question whether plaintiffs may at this time file a complaint against Rivera Construction Co. See *De Sisto* v. *City of Linden*, 193 A.2d 870 (N.J. 1963); *Holmes* v. *Capital Transit Company*, 148 A.2d 788 (Munic. Ct. App. D.C. 1959); 3 Moore, Federal Practice 611, § 14.16 (2d ed. 1964); 1A Barron & Holtzoff, *op. cit.* at 703, § 427.

The judgments rendered by the Superior Court, Ponce Part, on August 23, 1963 and September 12, 1963, in cases CS-62-1365 and CS-62-1854, will be reversed.